THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. LEOPOLD W. BRANDENBURG, SADIE STROHMEYER, FRED STROHMEYER AND FRED NELL, PLAINTIFFS IN ERROR.

Argued May 6, 1947—Decided April 26, 1948.

Before CASE, CHIEF JUSTICE, and Justice BURLING.

For the defendant in error, *Walter G. Winne,* Prosecutor of the Pleas of Bergen County, and *Wallace S. DePuy,* Assistant Prosecutor of the Pleas.

For the plaintiffs in error, *Fred G. Schlosser, Joseph W. Marini* and *Samuel L. Hirschberg.*

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. Plaintiffs in error, herein called defendants, stand convicted of producing the miscarriage of a pregnant married woman, one Doreen Stilger. Brandenburg is a licensed physician and surgeon and was convicted as a principal offender. The Strohmeyers and Nell were convicted as aiders and abettors. The case comes up on assignments of error and on specifications for reversal under *R. S.* 2:195–16.

Defendants first contend that the trial court erred in refusing to charge that the indictment was not evidence against any of the defendants and was not to be considered as evidence during the deliberations of the jury on the evidence in the case. It was held by the Court of Errors and Appeals in *State* v. *D'Orio,* 136 *N. J. L.* 204, that although it was proper for the trial judge to charge the jury that an indictment is no evidence of guilt, it is not reversible error to refuse such charge where presumption of innocence, burden of proof and reasonable doubt are properly charged unless something can be pointed to in the charge or in the conduct of the trial from which it might be said that the jury could have been misled into thinking that the indictment was evidential. The application of that rule to the incidents of the present trial leads us to conclude that the refusal did not constitute reversible error.

It is next said that the court erred in permitting the jury to consider, as competent, testimony regarding allegedly criminal abortions performed upon two women named Caruso and Van Heusen, respectively. The named persons were women who were operated on by Dr. Brandenburg for the removal of embryos at the same time and place as was Mrs. Stilger. The court charged that the testimony was competent for the purpose of determining the question of intent with which the act was committed upon Mrs. Stilger but that the jury was only to pass upon the guilt of the defendants in the case involving Mrs. Stilger. We consider that the disputed proofs were admissible for the stated purpose and that the court charged soundly in that respect. *State* v. *Slurchio,* 130 *N. J. L.* 259; *affirmed,* 131 *Id.* 256; *State* v. *Weiss;* 130 *Id.* 149; *affirmed,* 131 *Id.* 228.

Defendants next complain of the refusal of the court to charge: "If any of the defendants has admitted conviction of crime, the jury are to consider that fact only for the purpose of affecting credibility as a witness." The matter had relation to the admission by Dr. Brandenburg that he had been convicted of crime. The court, commenting thereon, said, "You may, therefore, as jurors take that into consideration in determining whether or not you will believe the witness, or what weight, or credit you shall, in your judgment, accord to the testimony of that witness." The subject-matter of the request was adequately charged. We find no error in the matter thus advanced.

It is next said that there was error in the charge and in refusals to charge as follows: The court charged:

"Lawful justification is used in the sense of necessity. It is a defense that the destruction of the child's life was necessary to save that of the mother, but it should be remembered that necessity of this class must be strictly limited. The right can only be exercised in extremity."

The court declined to charge that the protection of the health of the woman and the protection of her well-being would constitute lawful justification under the statute. The statute (*R. S.* 2:105–1) provides:

"Any person who, maliciously or without lawful justification, with intent to cause or procure the miscarriage of a woman then pregnant with child, shall:

"a. Administer to her, prescribe for her, or advise or direct her to take or swallow any poison, drug, medicine or noxious thing; or

"b. Use any instrument or means whatever * * *

"Shall be guilty of a high misdemeanor."

No substantial support is shown for the proposition that so broad a ground as "well-being" may be considered by a jury as ground for causing a miscarriage. We find it unnecessary to consider whether under our statute and the construction thereof given by our courts threatened impairment of a woman's health, as distinguished from the saving of her life, constitutes lawful justification. Defendants' case was not rested at all upon the former hypothesis. The state introduced testimony which went to prove guilt. It was admitted that an operation was performed by Dr. Brandenburg upon Mrs. Stilger for the removal of an embryo; but the contention was that the embryo was dead and that it had to be removed and the womb curetted in order to save the patient's life. It was Dr. Brandenburg's clear testimony, much of it reiterated, that he did not cause or procure a miscarriage; that at the time of his physical examination prior to the operation the embryo or unformed foetus was dead and in process of being discharged by natural causes; that the cervix was soft and open and that the dead embryo was protruding therefrom; that on the dilating of the cervix for examination bleeding became "very, very, very copious," such as to present a pressing emergency and to make a delay of even a few hours inadvisable; wherefore the witness proceeded at once to administer an anesthetic, widen the opening of the cervix and remove all the "secunda" (secundinae?), including the "miserated" foetus and the afterbirth; that the operation was an emergency and was necessary in order to save the patient's life. The disputed charge went, to the benefit of the defendants, beyond the case set up by them. The defense was that the embryo was dead and that the removal thereof was an emergency operation necessary to save the mother's life; the

charge was to the effect that, even if, as the state contended, the embryo was alive, the purposeful producing of an abortion was nevertheless legally justified if such an act was necessary in order to save the life of the mother. There need be slight intelligence to follow through with the thought that if in such an emergency the removal of a live embryo was legally justifiable, certainly the removal of a dead embryo would likewise be, also. The jury must clearly have understood that if the defense was founded in truth the act was justified. Obviously, and with ample support in the proofs, the jury did not give credence to the story. The point presents no reversible error.

Likewise free of prejudicial error was the reading of the statute, *supra,* by the judge to the jury and the comments made by the court thereon. The argument is that there was confusion between the use of an instrument and the use of drugs. It is clear that the only application of drugs was for the purpose of producing anesthesia during the use, which was admitted, of the instrument in removing the embryo and curetting the womb. We are satisfied that the jury was left under no misapprehension in that respect.

We have considered defendants' six remaining points, including the refusal to direct verdicts of acquittal and the contention that the verdicts are against the weight of the evidence, and find no prejudicial error therein. There was ample evidence to take the case to the jury and to sustain the verdicts of guilt.

The judgments of conviction will be affirmed.