STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN J. MORETTI AND MARIETTA SCHMIDT, DEFENDANTS-APPELLANTS.

Argued June 4, 1968—Decided June 28, 1968.

Mr. *George R. Sommer* argued the cause for defendant-appellant, John J. Moretti.

Mr. *Richard A. Walsh* argued the cause for defendant-appellant, Marietta Schmidt (Mr. *Raymond A. Peck, Jr.,* attorney).

Mr. *James R. Zazzali,* Assistant Prosecutor, argued the cause for plaintiff-respondent (Mr. *Joseph P. Lordi,* Prosecutor of Essex County, attorney; Mr. *James R. Zazzali* on the brief).

The opinion of the court was delivered by

PROCTOR, J. Defendants John J. Moretti, Marietta Schmidt, and Lawrence Gianettino were convicted in the Essex County Court of conspiracy to commit an unlawful abortion on Sylvia Swidler. *N. J. S.* 2A:98–1, 2; *N. J. S.*

2A :87–1.[1] Gianettino died shortly after the trial. On the appeal of Moretti and Schmidt, the Appellate Division affirmed the conviction with one judge dissenting. 97 *N. J. Super.* 418 (*App. Div.* 1967). Moretti and Schmidt appealed to this Court under *R. R.* 1 :2–1(*b*).

On the evidence the jury could find that Mrs. Schmidt arranged with Moretti, a physician, to have an abortion performed on Mrs. Swidler. The abortion was to be performed by Gianettino, an inspector for the New Jersey State Board of Barber Examiners. Unknown to the defendants, Mrs. Swidler was a special investigator for the Essex County Prosecutor's Office. Gianettino appeared at about eleven o'clock one evening at the Swidler home pursuant to an appointment with Mrs. Swidler. She paid him $600 in marked money and they went upstairs to her bedroom where the abortion was to be performed. As Gianettino removed instruments to perform the abortion from a bag he had brought with him, the police who had been secreted in the house arrested him. The State concedes that Mrs. Swidler was not pregnant.

It has been held that under our statute, *N. J. S.* 2A :87–1, an essential element of the crime of abortion is that the wo-

---

[1] The pertinent provisions of these statutes are:

*N. J. S.* 2A :98–1 :

"Any 2 or more persons who conspire:

a. To commit a crime ; or

\* \* \* \* \* \* \*

Are guilty of a conspiracy and each shall be punished . . . as for a misdemeanor."

*N. J. S.* 2A :98–2 :

"Except for conspiracy to commit arson, breaking and entering or entering, burglary, kidnapping, manslaughter, murder, rape, robbery or sodomy, no person shall be convicted and punished for conspiracy unless some act be done to effect the object thereof by 1 or more of the parties thereto."

*N. J. S.* 2A :87–1 :

"Any person who, maliciously or without lawful justification, with intent to cause or procure the miscarriage of a pregnant woman, administers or prescribes or advises or directs her to take or swallow any poison, drug, medicine or noxious thing, or uses any instrument or means whatever, is guilty of a high misdemeanor.

\* \* \* \* \* \* \*"

man be pregnant. *State v. Sturchio,* 131 *N. J. L.* 256 (*E. & A.* 1943) ; *State v. Colmer,* 45 *N. J. Super.* 236, 243 (*App. Div.*), certification denied, 25 *N. J.* 44 (1957). The defendants contend that since it was impossible to commit an abortion upon Mrs. Swidler because she was not pregnant, they cannot be convicted of a criminal conspiracy to commit an abortion. The argument runs that if no violation of the law was to be accomplished by the act of the defendants, they cannot be held for conspiracy to do that act. The majority of the Appellate Division rejected this argument, while the dissenting judge found it to be ground for reversing the convictions.

The crime of conspiracy is distinct from the substantive offense which the conspirators plotted to commit. *Pinkerton v. United States,* 328 *U. S.* 640, 643, 66 *S. Ct.* 1180, 1181, 90 *L. Ed.* 1489, 1494, rehearing denied 329 *U. S.* 818, 67 *S. Ct.* 26, 91 *L. Ed.* 697 (1946). The essence of the statutory crime of conspiracy is the joining together of the conspirators with an unlawful intent. *State v. Dennis,* 43 *N. J.* 418, 423 (1964). It is this unlawful purpose upon which they agreed which makes a conspiracy punishable once any overt act is committed in furtherance of it. As Justice Heher said for this Court in *State v. Carbone,* 10 *N. J.* 329, 338 (1952) : "The union is invested with a potentiality for evil that renders the plan criminal in itself, and punishable as such if an act be done to effect its object." Here, there can be no doubt that if, as the jury found, there was an agreement among the defendants, its purpose was to commit an unlawful abortion and the conspirators took substantial steps in an endeavor to accomplish this end. That, unknown to them, Mrs. Swidler was not in a condition to be aborted in no way negates their clearly manifested intent to commit a criminal act. Such concerted intent, coupled with an overt act, is punishable whether or not the contemplated crime is consummated. *United States v. Bayer,* 331 *U. S.* 532, 542, 67 *S. Ct.* 1394, 1399, 91 *L. Ed.* 1654, 1661, rehearing denied 332 *U. S.* 785, 68 *S. Ct.* 29, 92 *L. Ed.* 368

(1947). That a factor unknown to the conspirators makes it impossible for them to complete their intended crime in no way lessens the degree of culpability involved in the criminal combination. *People v. Nathanson,* 389 *Ill.* 311, 318, 59 *N. E. 2d* 677, 680, *certiorari* denied, 325 *U. S.* 872, 65 *S. Ct.* 1412, 89 *L. Ed.* 1990 (1945) (holding that in a prosecution for conspiracy to commit an abortion it was not necessary to prove the woman's pregnancy) ;[2] *Craven v. United States,* 22 *F. 2d* 605 (*1st Cir.* 1927), *certiorari* denied, 276 *U. S.* 627, 48 *S. Ct.* 321, 72 *L. Ed.* 729 (1928) (holding that the defendant could be convicted of conspiring with others to smuggle imported liquor even though he had been deceived by the substitution of liquor of domestic origin).

 ■■ The case has been argued as though, for purposes of the defense of impossibility, a conspiracy charge is the same as a charge of attempting to commit a crime. It seems that such an equation could not be sustained, however, because, as discussed above, a conspiracy charge focuses primarily on the *intent* of the defendants, while in an attempt case the primary inquiry centers on the defendants' *conduct* tending toward the commission of the substantive crime. The crime of conspiracy is complete once the conspirators, having formed the intent to commit a crime, take any step in preparation; mere preparation, however, is an inadequate basis for an attempt conviction regardless of the intent. See *State v. Schwarzbach,* 84 *N. J. L.* 268, 270 (*E. & A.* 1913). Thus, the impossibility that the defendants' conduct will result in the consummation of the contemplated crime is not as pertinent in a conspiracy case as it might be in an attempt prosecution. However, we need not pursue this point

---

2 The defendants argue that *Nathanson* is distinguishable because the Illinois abortion statute expressly makes the woman's pregnancy unnecessary. *Ill. Rev. Stat.* ch. 38 § 23–1. This provision, however, was enacted in 1961 (*Crim. Code of 1961*) as an amendment to the statute under which *Nathanson* was decided—a statute substantially similar to ours, requiring pregnancy for the consummated crime of abortion. *Smith-Hurd Stat.* ch. 38 § 3 (1929). See *People v. Peyser,* 380 *Ill.* 404, 44 *N. E. 2d* 58 (1942).

since we are satisfied that even if we treat the present appeal as an attempt case the defense of impossibility does not shield the defendants.

In our view, this case is indistinguishable in principle from cases such as *State v. Meisch*, 86 *N. J. Super.* 279 (*App. Div.*), certification denied, 44 *N. J.* 583 (1965). In *Meisch*, defendant was convicted of attempted larceny. It was held that it was no defense that the drawer into which the defendant thrust his hand contained no property which could be the subject of larceny. Likewise, it should be no defense in an attempted abortion case that the woman, because not pregnant, could not be the subject of an abortion. As the Illinois Supreme Court said:

"An attempt may be made to commit a crime which it is impossible for the person making the attempt to commit because of the existence of conditions of which he is ignorant. Whenever the law makes one step toward the accomplishment of an unlawful object with the intent of accomplishing that object criminal, a person taking the step with that intent and capable of doing every act on his part to accomplish that object cannot protect himself from responsibility by showing that because of some fact of which he was ignorant at the time it was impossible to accomplish the purpose intended in that case." *People v. Huff*, 339 *Ill.* 323, 331, 171 *N. E.* 261, 262 (1930).

In that case it was held that the defendant was guilty of an attempted abortion although the woman was not pregnant and therefore, under a statute similar to ours (see n.2, *supra*), the substantive crime of abortion could not be committed.

The defense of impossibility in a prosecution for an attempted crime has resulted in a confused mass of law throughout the country and the principles announced in *Meisch* and *Huff, supra,* are the subject of much dispute. Compare, *People v. Jaffe*, 185 *N. Y.* 497, 78 *N. E.* 169, 9 *L. R. A., N. S.,* 263 (1906) with *People v. Gardner,* 144 *N. Y.* 119, 38 *N. E.* 1003, 28 *L. R. A.* 699 (1894). See cases discussed in Wechsler, Jones and Korn, *The Treatment of Inchoate Crimes in the Model Penal Code of the A. L. I.*:

*Attempt, Solicitation, and Conspiracy,* 61 *Colum. L. Rev.* 571, 578–85 (1961). See also, *Osborn v. United States,* 385 *U. S.* 323, 333, 87 *S. Ct.* 429, 434, 17 *L. Ed. 2d* 394, 401 (1966) where Justice Stewart, speaking for the Court, questioned whether "the doctrine of 'impossibility' with all its subtleties" should have continued validity. The defense has been extensively discussed by both courts and commentators. See, *e. g., People v. Rojas,* 55 *Cal. 2d* 252, 10 *Cal. Rptr.* 465, 358 *P. 2d* 921, 85 *A. L. R. 2d* 252 (1961) ; *State v. Elliott,* 206 *Or.* 82, 289 *P. 2d* 1075 (1955) ; *People v. Moran,* 123 *N. Y.* 254, 25 *N. E.* 412, 10 *L. R. A.* 109 (1890) ; *United States v. Thomas,* 13 *U. S. C. M. A.* 278, 32 *C. M. R.* 278 (1962) ; *Ventimiglia v. United States,* 242 *F. 2d* 620 (*4th Cir.* 1957) ; *O'Malley v. United States,* 227 *F. 2d* 332 (*1st Cir.* 1955), *certiorari* denied, 350 *U. S.* 966, 76 *S. Ct.* 434, 100 *L. Ed.* 838 (1956) ; *Woo Wai v. United States,* 223 *F.* 412 (*9th Cir.* 1915) ; *Booth v. State,* 398 *P. 2d* 863 (*Okl. App.* 1965) ; *Perkins, Criminal Law, pp.* 476–500 (1957) ; Arnold, *Criminal Attempts — The Rise and Fall of An Abstraction,* 40 *Yale L. J.* 53 (1931) ; Keedy, *Criminal Attempts at Common Law,* 102 *U. Pa. L. Rev.* 464 (1954) ; Sayre, *Criminal Attempts,* 41 *Harv. L. Rev.* 821 (1928) ; Smith, J. C., *Two Problems in Criminal Attempts,* 70 *Harv. L. Rev.* 422 (1957) ; Wechsler, Jones and Korn, *supra* (pts. 1 and 2), 61 *Colum. L. Rev.* 571, 957.

Our examination of these authorities convinces us that the application of the defense of impossibility is so fraught with intricacies and artificial distinctions that the defense has little value as an analytical method for reaching substantial justice. Many courts hold that where there is a "legal impossibility" of completing the substantive crime the defendant cannot be guilty of an attempt, but where there is "factual impossibility" the accused may be convicted. We think the effort to compartmentalize factual patterns into these categories of factual or legal impossibility is but an illusory test leading to contradictory, and sometimes absurd, results. *E. g.,* cases summarized in *People v. Rollino,* 233

N. Y. S. 2d 580, 582–83 (*Sup. Ct.* 1962). See Arnold, *supra,* 40 *Yale L. J.,* at *p.* 80; Wechsler, Jones and Korn, *supra,* 61 *Colum. L. Rev.,* at *pp.* 578–83. In the present case, the defendants' intent to commit an abortion on Mrs. Swidler is clear; believing her to be pregnant, they did all that was in their power to bring about the criminal result they desired. That, had the police not intervened, they would have been thwarted in attaining this end by the unknown fact that Mrs. Swidler was not pregnant does not in one whit diminish the criminal quality of their agreement. The consequence the defendants intended was a result which, if successful, would have been a crime. We hold that when the consequences sought by a defendant are forbidden by the law as criminal, it is no defense that the defendant could not succeed in reaching his goal because of circumstances unknown to him. See *Marley v. State,* 58 *N. J. L.* 207, 212 (1895) where our former Supreme Court recognized that criminal liability would attach to a person "designing to perpetrate a crime, when he cannot effect it by reason of the existence of some fact unknown to him at the time." Accordingly, we conclude that the defendants could be convicted of conspiracy to perform an abortion on Mrs. Swidler notwithstanding the absence of pregnancy. Our conclusion is in accord with the *Model Penal Code* § 5.01 (Proposed Official Draft; May 4, 1962):

"(1) *Definition of Attempt.* A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

(a) purposely engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; * * *."

In the present case, the jury was justified in finding that the defendants purposely and culpably engaged in conduct which would constitute the crime of abortion if the attendant circumstances — including Mrs. Swidler's pregnancy — were as they believed them to be.

The defendants further contend that *N. J. S. 2A*:87–1 is so "vague and indefinite" that it suffers a constitutional infirmity. This claim is based on the statutory language "without lawful justification" which, it is argued, is so indefinite a concept that no one could tell when an abortion would be justified.

■ Clearly, a construction of the statute which confined the meaning of the phrase "lawful justification" to the preservation of the mother's life would avoid any constitutional attack based on vagueness. See *State v. Shapiro,* 89 *N. J. L.* 319 (*E. & A.* 1916); *State v. Brandenburg,* 137 *N. J. L.* 124 (*Sup. Ct.* 1948). *Cf. State v. Baird,* 50 *N. J.* 376 (1967); *Sanitary Vendors v. Byrne,* 40 *N. J.* 157 (1963); *State v. Hudson County News Co.,* 35 *N. J.* 284 (1961). However, in *Gleitman v. Cosgrove,* 49 *N. J.* 22 (1967), a tort case, two members of this Court in a dissenting opinion indicated their belief that the Court, while carrying out the general legislative purpose, could interpret the meaning of lawful justification "from time to time in the light of prevailing conditions." See dissenting opinion of Justice Jacobs, *Id.,* at *p.* 53. Another member maintained that the statutory phrase was limited to situations where the life of the mother was in jeopardy. See concurring opinion of Justice Francis, *Id.,* at *p.* 40. Only the Chief Justice expressed doubts as to the constitutionality of the statute, but his discussion related solely to the statute's application to eugenic abortions. Dissenting opinion of Chief Justice Weintraub, *Id.,* at *p.* 56. Three members of the Court found it unnecessary to deal with the abortion statute in the context of this tort case, but did intimate that the phrase "lawful justification" might be read more broadly than merely to pertain to the preservation of the mother's life. *Id.,* at *p.* 31. See *Model Penal Code* § 207.11, comment 4, *pp.* 153–54 (Tentative Draft No. 9, 1959). The concern for a re-examination of the values represented by the law of criminal abortion is reflected in the recent creation by the Legislature of a commission to reevaluate the abortion statute. Assembly

192

Concurrent Resolution No. 24 (filed with Secretary of State April 29, 1968).

 However, in the circumstances of the case before us, the ascertainment of the perimeter of lawful justification is not presented, and we need not concern ourselves with the questions discussed in the several opinions in the *Gleitman* case. The only inquiry before us is whether *these* defendants had sufficient warning that their conduct was criminal. A contention that a statute violates due process because of vagueness is based on the theory the defendant had no fair warning that his conduct was proscribed. Thus, a defendant whose conduct was such that he clearly could tell that it was prohibited will not be heard to say that the statute is overly broad and that another, in some hypothetical case, could be misled. In *United States v. National Dairy Products Corp.*, 372 *U. S.* 29, 83 *S. Ct.* 594, 9 *L. Ed.* 2d 561, rehearing denied 372 *U. S.* 961, 83 *S. Ct.* 1011, 10 *L. Ed 2d* 13 (1963), the defendants challenged as unconstitutionally vague section 3 of the Robinson-Patman Act (15 *U. S. C.* § 13a) which makes it a crime to sell goods at "unreasonably low prices for the purpose of destroying competition or eliminating a competitor." Despite the indefiniteness of the phrase "unreasonably low prices," the Court held that the defendants, who with the requisite intent had sold below cost, were adequately warned of the criminality of their conduct and that the statute was constitutional as applied to them. The Court said:

"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. United States v. Harriss, 347 U. S. 612, 617, 74 S. Ct. 808, 98 L. Ed. 989, 996 (1954). In determining the sufficiency of the notice a statute must of necessity be examined in *the light of the conduct with which a defendant is charged.*" *Id.* at 32–33, 83 S. Ct. at 598. 9 *L. Ed.* 2d at 565–566 (emphasis added).

If, therefore, the statute gave sufficient warning to these defendants that the abortion they contemplated was not law-

fully justifiable and thus was criminal, the statute is constitutional as applied to them.[3] See *United States v. Raines,* 362 *U. S.* 17, 80 *S. Ct.* 519, 4 *L. Ed. 2d* 524 (1960); *Jordan v. DeGeorge,* 341 *U. S.* 223, 231–232, 71 *S. Ct.* 703, 707–708, 95 *L. Ed.* 886, 892–893 (1951); *United States v. Petrillo,* 332 *U. S.* 1, 7, 67 *S. Ct.* 1538, 1541, 91 *L. Ed.* 1877, 1882–1883 (1947); *United States v. Wurzbach,* 280 *U. S.* 396, 50 *S. Ct.* 167, 74 *L. Ed.* 508 (1930); *State v. Monteleone,* 36 *N. J.* 93, 99–100 (1961); *State v. Suess,* 236 *Minn.* 174, 183, 52 *N. W. 2d* 409, 415 (1952); *Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court,* 71 *Yale L. J.* 599, 617–20 (1962). See also, *Sanitary Vendors, Inc. v. Byrne, supra,* 40 *N. J.,* at *pp.* 162–63. That in some other case where the facts required it, we might be called upon to determine the specific limits of the statutory exception for abortions performed with lawful justification — or to deal with a constitutional challenge made by a defendant claiming he was not adequately warned of the criminality of his conduct — is of no aid to these defendants if their conduct was such as clearly fell within the prohibition of the statute.

We conclude that the defendants here could not fail to be aware that the abortion they conspired to commit would vio-

---

[3] It must be noted that we are not dealing here with a statute restricting freedom of expression. As the Court said in *United States v. National Dairy Products Corp.,* 372 *U. S.* 29, 36, 83 *S. Ct.* 594, 9 *L. Ed. 2d* 561, 568, rehearing denied, 372 *U. S.* 961, 83 *S. Ct.* 1011, 10 *L. Ed. 2d* 13 (1963):

"[T]he approach to 'vagueness' governing a case like this is different from that followed in cases arising under the First Amendment. There we are concerned with the vagueness of the statute 'on its face' because such vagueness may in itself deter constitutionally protected and socially desirable conduct. See Thornhill v. Alabama, 310 U. S. 88, 98, 60 S. Ct. 736, 742, 84 L. Ed. 1093, 1100 (1940); NAACP v. Button, 371 U. S. 415, 83 S. Ct. 328, 9 L. Ed. 2d 405. No such factor is present here where the statute is directed only at conduct designed to destroy competition [or to prohibit an abortion], activity which is neither constitutionally protected nor socially desirable." (Bracketed material ours.)

late the statute. The Appellate Division noted that the defendants offered no argument of lawful justification before that court. 97 *N. J. Super.*, at *p.* 422. Before us, the defendants contend that they believe the abortion would be lawfully justified because it was to terminate an allegedly unwanted pregnancy. It is beyond comprehension that the defendants could have believed that our abortion statute envisioned lawful justification to exist whenever a woman wanted to avoid having a child. The statutes of no jurisdiction in this country permit such an excuse for an abortion. Even under the *Model Penal Code,* which substantially increases the reasons justifying an abortion, such "justification" would not protect against criminal punishment. *Model Penal Code* § 230.3 (Proposed Official Draft 1962). Moreover, if the woman's mere desire not to have the child were justification for an abortion, the statute would be rendered meaningless since any abortion to which the woman consented would be deemed lawfully justified. If there could be any doubt of the defendants' knowledge that their actions were unlawful it would be dissipated by their surreptitious conduct revealed by the record—including the sending of the barber-examiner Gianettino on a nocturnal visit to Mrs. Swidler's home to perform the operation—and the statement ascribed to Gianettino by Mrs. Swidler that, when he telephoned to make the appointment for the operation, he told her: *"This is illegal,* I could not possibly take a check from you." (Emphasis added.)

Under the circumstances of this case, the defendants are in no position to urge that the statute was too vague to warn them that their contemplated conduct was proscribed. Accordingly, we hold that the statute is constitutional as applied to them.

We have considered the additional points raised by the defendant Schmidt and we conclude that the Appellate Division properly found them to be without merit.

Affirmed.

WEINTRAUB, C. J. (concurring). For the reasons given in my separate opinions in *Gleitman v. Cosgrove,* 49 *N. J.* 22, 55 (1967), and *State v. Baird,* 50 *N. J.* 376, 380 (1967), I believe the statute is an incomplete expression of legislative will, that it is the legislative branch which should decide what ought to constitute "lawful justification," and hence I would declare the statute invalid. However, since the majority in both cases were obviously of another view, I am obliged to approach this case on the assumption that the statute is constitutional and that no "lawful justification" existed for the planned abortion. On that basis I reach the question whether the conspiracy was beyond the statute because the woman the defendants planned to abort was in fact not pregnant. As to that issue, I join in the opinion of Mr. Justice PROCTOR.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal* —None.