**UNITED STATES of America**

v.

**HENG AWKAK ROMAN and Lee Koo,**
**Defendants.**

**No. 72 Cr. 1325.**

United States District Court,
S. D. New York.

March 19, 1973.

Whitney North Seymour, Jr., U. S. Atty., for the Government; by Franklin B. Velie, Asst. U. S. Atty.

Gilbert Epstein, New York City, for defendant Lee Koo.

Robert Kasanof, New York City, for defendant Heng Roman; by Larry S. Greenberg, The Legal Aid Society, New York City.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

Defendants Heng Roman (Heng) and Lee Koo (Koo) were tried before me without a jury on a two-count indictment charging them in count I with conspiracy to violate the narcotics laws, 21 U.S.C. §§ 846, 963, and in count II with possession of 2.5 kilograms of heroin, in the Southern District of New York on November 20, 1972, with intent to distribute, 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A). At the conclusion of the four-day trial, I found both defendants guilty on the conspiracy count (count I), and reserved decision on the substantive count (count II). Both sides filed post-trial briefs, the last of which was filed on March 7, 1973. I now find both defendants guilty of an attempt to commit the crime charged in the substantive count.

The facts relating to the substantive count are as follows: John T. Smith, the informer in this case, after several preliminary meetings with Heng, met with both defendants on November 7, 1972 at the Strand Hotel in Singapore. The ensuing discussion concerned the importation and sale of substantial amounts of narcotics in the United States. On November 12th or 13th, the defendants picked up Smith's suitcase at his hotel. The following evening they showed it to Smith at Heng's house. Smith saw that it contained white powder, which Heng said was 2.5 kilograms of heroin. Subsequent laboratory analysis confirmed that it was indeed heroin, over 96% pure. The next day Heng drove Smith to the airport, with the suitcase in the trunk of the car, with the heroin in it. At the airport, Smith, without Heng's knowledge, gave the suitcase to an agent of the Bureau of Narcotics and Dangerous Drugs (BNDD). The heroin it contained, which is the subject of count II, was removed, and thereafter remained in the custody of law enforcement officers. Smith then flew to New York. Subsequently, the heroin was brought to New York by the BNDD and was produced at the trial.

After Smith arrived in New York City, he contacted BNDD agents here. On November 20, 1972, he picked up the suitcase, which by then contained only soap powder packaged as the heroin had been, at the BNDD office here and placed it in a locker in Pennsylvania Station. Later that evening, by prearrangement made with defendants in Singapore, Smith met them at the Hotel McAlpin in Manhattan and showed Heng the key to the locker.[1]

That evening, November 20th, and the following day, the 21st, the defendants offered to sell the 2.5 kilograms of heroin to agents of the BNDD who were posing as buyers. The agents sought to purchase simultaneously an additional 25

---

[1]. The following day, Smith showed Heng the suitcase in the locker but did not open the suitcase.

kilograms which Heng claimed to have under defendants' control on the West Coast. Heng insisted the initial transaction be limited to the 2.5 kilograms. When it became apparent that an impasse in the negotiations had developed, the agents arrested both defendants.

Of the two defendants, Heng conducted virtually all the negotiations and nothing further need be said with regard to him. Koo speaks practically no English. Nevertheless, Koo's participation in and full knowledge of the transaction are established by the following facts, among others: Heng's characterization of Koo as his partner and his supplier's right hand man; Koo's presence at key meetings on the 20th and 21st, as well as earlier in Singapore when the heroin in the suitcase was shown to Smith; Koo's conversations with Heng in Chinese during the negotiations; Koo's occasional participation in broken English in the negotiations; and Koo's accompaniment of Heng on what was their prearranged and first trip to the United States.[2]

As is apparent from these findings of fact, I do not believe and reject Heng's testimony that he never had any dealings, or other connection with or possessed any narcotics and that this elaborate plan, the other parts of which he admitted, was merely a scheme to defraud Smith, the informer, by obtaining money from Smith but not producing any narcotics, to retaliate for a wrong that he claimed Smith had previously done him.

█ Had the heroin still been in the suitcase at Pennsylvania Station on November 20, 1972, and had Smith in fact been a true accomplice of the defendants, the defendants would have had constructive possession of the heroin, even though Smith retained the key to the locker containing the suitcase. "[C]onstructive possession is found only where the defendant has set the price

for the sale, or was able to assure delivery or had the final say as to the means of transfer." United States v. Steward, 451 F.2d 1203, 1207 (2d Cir. 1971). This principle has been applied in numerous cases in this circuit. *Compare* United States v. Lopez, 355 F.2d 250 (2d Cir. 1966) *and* United States v. Rivera, 346 F.2d 942 (2d Cir. 1965) *and* United States v. Carter, 320 F.2d 1 (2d Cir. 1963) *and* United States v. Douglas, 319 F.2d 526 (2d Cir. 1963) *and* United States v. Ramis, 315 F.2d 437 (2d Cir. 1963) (all finding constructive possession) *with* United States v. Steward, *supra*, at 1207 *and* United States v. Jones, 308 F.2d 26 (2d Cir. 1962) (en banc) (finding no constructive possession). If the realities of the situation on November 20, 1972 had been as the defendants supposed, constructive possession could have been found since they set the price and would have been able to assure delivery. The three indicia of constructive possession are disjunctive; a finding that any one exists is sufficient basis to support a finding of constructive possession. *See* United States v. Febre, 425 F.2d 107, 111 (2d Cir.), cert. denied, 400 U.S. 849, 91 S.Ct. 40, 27 L.Ed.2d 87 (1970).

The realities of the situation, however, were not as the defendants believed. The heroin was not in the suitcase, but rather safely in the custody of the BNDD. Moreover, Smith was not truly their confederate, but was instead an informer working for the BNDD. It is quite plain that the defendants did not have either actual or constructive possession of 2.5 kilograms of heroin in the Southern District of New York on November 20, 1972 as charged in count II.

█ Although defendants are not guilty of *possession* with intent to distribute, as charged in count II, they are guilty of an *attempt* to commit that crime. 21 U.S.C. § 846.[3] I find them

---

2. Alternatively, *cf.* Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

3. § 846. Attempt and conspiracy
  Any person who attempts or conspires to commit any offense defined in this

guilty of attempted possession with intent to distribute.[4]

■ "Attempt", as used in section 846, is not defined. Indeed, there is no comprehensive statutory definition of attempt in federal law. It is not necessary here, however, to deal with the complex question of when conduct crosses the line between "mere preparation" and "attempt", only the latter being a crime. For here we have a situation where the defendants' actions would have constituted the completed crime if the surrounding circumstances were as they believed them to be.[5] Under such circumstances, their actions constitute an attempt. People v. Siu, 126 Cal.App. 2d 41, 271 P.2d 575 (1954) (defendant guilty of attempted possession of narcotics where he obtained possession of talcum believing it to be narcotics); O'Sullivan v. Peters, [1951] S.R. 54 (South Australia, 1951) (defendant who placed bet on horse which had previously been scratched held guilty of attempt of bet on horse race); Regina v. Ring, 66 L.T.R. (n. s.) 300, 17 Cox C.C. 491 (England, 1892) (reaching into empty pocket constitutes attempt to steal from pocket); People v. Moran, 123 N.Y. 254, 25 N.E. 412 (1890) (same); People v. Fiegelman, 33 Cal.App.2d 100, 91 P.2d 156 (1939) (same); United States v. Thomas, 13 U.S.C.M.A. 278, 32 C.M.R. 278 (1962) (defendants who had nonconsensual sexual intercourse with a woman who was dead, although they believed her to be alive, held guilty of attempted rape); State v. Damms, 9 Wis.2d 183, 100 N.W.2d 592 (1960) (defendant guilty of attempted murder where he pointed gun at another, believing it to be loaded when in fact it was not loaded, and pulled trigger). Cf. Model Penal Code § 5.01(1) (P.O.D.1962) ("A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he [inter alia]  .  .  . purposefully engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be.  .  .  .").

The defendants contend that since it was impossible for them to possess the 2.5 kilograms of heroin, which at the time charged was in the hands of the BNDD, they cannot be found guilty of attempted possession. This argument does not help the defendants.[6]

The commentators and the cases generally divide the impossibility defense into two categories: legal versus factual impossibility. See W. LaFave & A. Scott, Handbook on Criminal Law 438–45 (2d ed. 1972); G. Williams, Criminal Law: The General Part 633–37 (2d ed. 1961); J. Hall, General Principles of Criminal Law 586–99 (2d ed. 1960); Ventimiglia v. United States, 242 F.2d 620, 625–626 (4th Cir. 1957); United States v. Thomas, 13 U.S.C.M.A. 278, 32

---

subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

4. Although the indictment did not charge an attempt, Rule 31(c), F.R.Cr.P., provides that a defendant "may be found guilty  .  .  . of an attempt to commit  .  .  . the offense charged  .  .  . if the attempt is an offense." See Simpson v. United States, 195 F.2d 721, 13 Alaska 635 (9th Cir. 1952); Small v. United States, 153 F.2d 144 (9th Cir.), cert. denied, 328 U.S. 838, 66 S.Ct. 1012, 90 L.Ed. 1613 (1946). Cf. United States v. Tropiano, 418 F.2d 1069, 1083 (2d Cir. 1969), cert. denied, Grasso v. United

States, 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970).

5. There is no doubt here, and I so find, that the defendants had the requisite mens rea; that is, that their actions were knowing and intentional, and with the purpose of distributing the heroin.

6. The defendants do not contend that the commission of the completed offense was also impossible because Smith was not really their ally. The result would be the same, however. It may be noted that in Osborn v. United States, 385 U.S. 323, 332–333, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966), the Supreme Court avoided deciding a similar question because the statute involved there proscribed an "endeavor" rather than an "attempt".

C.M.R. 278 (1962); State v. Moretti, 52 N.J. 182, 244 A.2d 499, 503–504, cert. denied, 393 U.S. 952, 89 S.Ct. 376, 21 L. Ed.2d 363 (1968). Sometimes a third category, "inherent impossibility", is also referred to. See LaFave & Scott, *supra,* at 439, 445–46.

■ "Legal impossibility" denotes conduct where the goal of the actor is not criminal, although he believes it to be. "Factual impossibility" denotes conduct where the objective is proscribed by the criminal law, but a circumstance unknown to the actor prevents him from bringing it about. "Inherent impossibility" is where the means chosen are totally ineffective to bring about the desired result, *e. g.,* voodoo. *See* LaFave & Scott, *supra,* at 445.

■ Defendants claim their defense is one of legal impossibility. Although the categorization of a case as involving one type of impossibility or another is often difficult, *see, e. g.,* Hughes, One Further Footnote on Attempting the Impossible, 42 N.Y.U.L.Rev. 1005 (1967), the case at hand plainly involves factual not legal impossibility.

There are apparently no federal cases in point, see 1 Working Papers of the National Commission on Reform of Federal Criminal Laws 360 (1970), but "All courts are in agreement that what is usually referred to as 'factual impossibility' is no defense to a charge of attempt." LaFave & Scott, *supra,* at 440. *See* the cases cited p. 437, *supra.* Moreover, in light of the absence of controlling contrary federal case law,[7] I hold that however this impossibility may be characterized, since the defendants' objective here was criminal, impossibility is no defense. This is in accord with the proposed revision of the federal criminal code (*see* Study Draft of a New Federal Criminal Code § 1001 and 1 Working Papers, *supra,* at 390; *accord,* N.Y.Penal L. § 110.10 (McKinney 1967)), and with the Model Penal Code (*see* Tentative Draft No. 10, at 32–38 (1960); Wechsler, Jones & Korn, The Treatment of Inchoate Crime in the Model Penal Code of the American Law Institute; Attempt, Solicitation, and Conspiracy, 61 Colum.Rev. 571, 578–85 (1961)). *Cf.* State v. Moretti, 52 N.J. 182, 244 A.2d 499, 503–504, cert. denied, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968).

■ The defendants next contend that their conduct was not sufficiently proximate to the completed crime to constitute an attempt. They rely on the well-known dissenting opinion of Justice Holmes in Hyde v. United States, 225 U.S. 347, 387, 32 S.Ct. 793, 56 L.Ed. 1114 (1921) and Judge Learned Hand's definition in United States v. Coplon, 185 F.2d 629, 633 (2d Cir. 1950), cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L. Ed. 688 (1952). However, where the conduct would constitute the completed crime if the circumstances were as the defendants believed them to be, the "dangerous proximity" test of Justice Holmes does not apply. *See* Model Penal Code § 5.01(1). Moreover, the defendants plainly went far beyond "mere preparation."

Accordingly, I find both defendants guilty on count II.

The foregoing opinion constitutes my findings of fact pursuant to Rule 23(c), F.R.Crim.P.

It is so ordered.

---

7. In Osborn v. United States, 385 U.S. 323, 333, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966) the Supreme Court indicated there might be some doubt about the "continuing validity" of the doctrine of impossibility in the law of criminal attempt.