134 N.J. Super. 54 (1975)
338 A.2d 219
RUMSON COUNTRY CLUB, PETITIONER-APPELLANT,
v.
COMMISSIONER OF COMMUNITY AFFAIRS, STATE OF NEW JERSEY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 10, 1975.
Decided May 5, 1975.
*56 Before Judges MICHELS, MORGAN and MILMED.
Messrs. McCarter & English, attorneys for appellant (Mr. Francis E.P. McCarter, of counsel and on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent, (Mr. Paul C. O'Connell, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Petitioner Rumson Country Club appeals from a final decision and order of the Commissioner of Community Affairs, State of New Jersey, which adopted the report and recommended decision of the hearing examiner of the Division of Housing and Urban Renewal, Department of Community Affairs, determining that Rumson Country Club was subject to the provisions of the Hotel and Multiple Dwelling Law (N.J.S.A. 55:13A-1, et seq.), and required it to register the building with the Bureau of Housing Inspection and pay the required registration and *57 inspection fees. The final decision and order also granted a further hearing to Rumson Country Club with respect to the abatement of violations of the "Regulations for Construction and Maintenance of Hotels and Multiple Dwellings" (N.J.A.C. 5:10-1.1 et seq.), promulgated by the Department of Community Affairs pursuant to the law.
The pertinent facts were stipulated by the parties. The building involved is a private club house owned by the "Rumson Country Club." It was formerly a private home which was converted to a clubhouse with certain additions, principally a men's locker room and an enclosed porch and dining area. The clubhouse is not open to the public at large and is available only to its members and their guests. The club has a liquor license with all the restrictions inherent to such a limited license.
The first floor of the clubhouse consists of a kitchen, dining room, bar room, men's locker room and lounge, and extra dining area. The second floor contains a ladies' locker room, ladies' room and lounge, and three double bedrooms and private baths. The three double bedrooms are available solely to members or their guests and, in fact are used very little. The third floor is occupied by the club manager and club bartender, who live on the premises for the convenience of the club. The club manager has two bedrooms and two baths and the bartender has a bedroom and bath. There is another bedroom which is not now used for any purpose but which was formerly occupied by another club employee. The third floor living accommodations are for staff use only and under no circumstances are they available for use by members or guests. The bedrooms in the club as they presently exist, except for redecoration and installation of a sprinkler system, have been in the same form as they were when the building was adopted for club purposes in or about 1948.
An inspection of the Rumson Country Club facilities disclosed various violations of the aforementioned regulations, *58 and an inspection report and order of the Commissioner was mailed to Rumson Country Club directing it to abate the violations. Pursuant to N.J.S.A. 55:13A-18 Rumson Country Club requested and was granted a hearing before the Commissioner of Community Affairs. On the basis of the stipulated facts the hearing examiner rendered his report and recommended decision, which was adopted by the Director of Housing and Urban Renewal and became the final decision and order of the Commissioner.
The Rumson Country Club appeals, contending that (1) the Hotel and Multiple Dwelling Law does not apply to it as it is a private social club; (2) the law is unconstitutional since it does not contain sufficient standards for determining when persons "live independently of each other," within the meaning of the term "multiple dwelling" as defined in N.J.S.A. 55:13A-3(k), and (3) the regulations promulgated by the Department of Community Affairs are without statutory authority and therefore void. We disagree.
The Hotel and Multiple Dwelling Law has as its declared policy "the protection of the health and welfare of the residents of [New Jersey] in order to assure the provision therefor of decent, standard and safe units of dwelling space." N.J.S.A. 55:13A-2. The Commissioner is expressly empowered to enter any hotel or multiple dwelling and to make such inspection as is reasonably necessary to carry out the provisions of this act (N.J.S.A. 55:13A-6), and is expressly empowered to issue an order requiring the owner of the hotel or multiple dwelling to terminate or cause to be terminated any violation thereby discovered (N.J.S.A. 55:13A-16). The Commissioner is also granted the power to issue an order directing that the hotel or multiple dwelling be vacated, and that the violation be corrected within a period specified by the order in the event that the violation constitutes an imminent hazard to the *59 health, safety or welfare of the occupants thereof. N.J.S.A. 55:33A-17.
The term "multiple dwelling" is defined in the law as follows:
(k) The term "multiple dwelling" shall mean any building or structure of one or more stories and any land appurtenant thereto, and any portion theerof, in which three or more units of dwelling space are occupied, or are intended to be occupied by three or more persons who live independently of each other, provided, that this definition shall not be construed to include any building or structure defined as a hotel in this act, or, registered as a hotel with the Commissioner of Community Affairs as hereinafter provided, or occupied or intended to be occupied exclusively as such. [N.J.S.A. 55:13A-3(k)]
The term "unit of dwelling space" or "dwelling unit" is defined as follows:
(h) The term "unit of dwelling space" or the term "dwelling unit" shall mean any room or rooms, or suite or apartment thereof, whether furnished or unfurnished, which is occupied, or intended, arranged or designed to be occupied, for sleeping or dwelling purposes by one or more persons, including but not limited to the owner thereof, or any of his servants, agents or employees, and shall include all privileges, services, furnishings, furniture, equipment, facilities and improvements connected with the use or occupancy thereof. [N.J.S.A. 55:13A-3(h)]
The Rumson Country Club facility is a "multiple dwelling" as the term is defined in N.J.S.A. 55:13A-3. See also N.J.A.C. 5:10-2.2. The clubhouse has three or more units of dwelling space which are occupied or intended to be occupied by three or more persons who live independently of each other. The clubhouse does not contain ten or more units of dwelling space and therefore does not qualify as a "hotel" as that term is defined by N.J.S.A. 55:13A-3(j) and N.J.A.C. 5:10-2.2.
Rumson Country Club's argument that the law was designed to apply solely to units of dwelling space in facilities offered for use by the general public and not to private *60 dwelling space, such as a private social club, flies in the face of the Legislature's declared policy. See N.J.S.A. 55:13A-2. The State's interest in protecting the health and welfare of its residents by assuring the provision for "decent, standard and safe units of dwelling space" is equally applicable to private as well as public units. For example, the failure to provide a second means of egress from a unit of dwelling space (such as the failure to provide fire escapes for apartments on the third floor of the clubhouse) creates an obvious safety hazard for the occupant of the unit, whether it be considered public or private.
Rumson Country Club's claim that the clubhouse is not "a multiple dwelling" within the meaning of the law because its occupants do not live "independently of each other," as required by N.J.S.A. 55:13A-3(k) in that there are no cooking facilities in each unit is equally lacking in merit. When the law became effective on May 31, 1967 the term "multiple dwelling" required not only that the occupants of the units of dwelling space "live independently of each other" but also that they "do their cooking upon the premises." This latter requirement was deleted from the definition of multiple dwelling by the 1970 amendment to the law. See L. 1970, c. 138, § 2.
While the statute does not prescribe specific criteria by which the phrase "persons who live independently of each other" can be measured, we are satisfied that the Law is not unconstitutionally vague, particularly as applied to the Rumson Country Club. Cf. State v. Moretti, 52 N.J. 182, 192 (1968), cert. den. 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968). The findings and conclusions of the hearing examiner that the occupants of the units of dwelling space at the clubhouse do live independently of each other and that the Hotel and Multiple Dwelling Law is therefore applicable to the Rumson Country Club is amply supported by the record. See Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93 (1973); Close *61 v. Kordulak Bros., 44 N.J. 589, 599 (1965); Associated Utility Services v. Bd. of Review, 131 N.J. Super. 584, 588 (App. Div. 1974).
Finally, we find no merit in the claim that the regulations promulgated by the Commissioner were without statutory authority and therefore void. The Commissioner is expressly granted the power to promulgate the "Regulations for Construction and Maintenance of Hotels and Multiple Dwellings" set forth in N.J.A.C. 5:10-1.1 et seq., by N.J.S.A. 55:13A-6 (e). The regulations so promulgated were fairly and reasonably necessary and appropriate to make the law effective.
Affirmed.