152 N.J. Super. 413 (1977)
377 A.2d 1255
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
PATRICIA LAVARY, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided July 29, 1977.
*416 Mr. Steven C. Rubin for defendant (Messrs. Tepper, Aaron and Rubin, attorneys).
Mr. Jerome P. Kineavy for the State (Mr. James M. Coleman, Jr., Prosecutor of Monmouth County, attorney).
ARNONE, J.S.C.
Defendant brings this motion seeking a number of different post-conviction remedies. She seeks (1) the merger of the three counts of the indictment; (2) a new trial pursuant to R. 3:20-1, or (3) dismissal of the indictment.
*417 Briefly, the evidence indicated that defendant had gone to Maryland at the request of New Jersey law enforcement authorities for whom she had been working as an informant from time to time. The purpose of the trip was to ascertain if defendant could provide evidence against her former husband who was suspected of involvement in a murder. While there she met a woman named Billie, a prior acquaintance from New Jersey. In the course of renewing their acquaintance defendant represented to Billie that the major irritation in her life was a Lt. Halliday of the Middletown Tp. Police Dept. She indicated to Billie that Lt. Halliday was constantly harassing her and was the source of all her major problems. She also stated to Billie that she was looking for someone who could "get" Lt. Halliday. Billie, who was an informant for the Maryland State Police, told defendant that she might know such a person. Billie subsequently told the Maryland State Police of the conversation. When the Maryland State Police learned that the intended victim was a New Jersey police officer, they resolved to have one of their undercover agents, Lt. Mazzone, introduced by Billie to defendant as the "hit man" defendant was seeking.
A number of telephone conversations ensued, beginning December 19, 1975. These conversations were taped by Lt. Mazzone. The gist of the conversations was that Lt. Mazzone would be paid a sum of money plus expenses to severely beat Lt. Halliday.
Defendant was subsequently indicted and convicted on three counts of an indictment charging conspiracy with an "undercover agent with the Maryland State Police" [Lt. Mazzone]. Two counts charged conspiracy to commit atrocious assault and battery; one charged conspiracy to commit mayhem. Defendant and the undercover agent of the Maryland State Police were the only individuals named in the indictment.
Defendant asserts in support of her first argument that "the conversations which were alleged to be the overt acts *418 were part of one course of conduct and to divide that into separate counts would be to cause multiplicity of prosecution".
The test to be applied in deciding the issue of merger is whether a particular act involved in a single transaction is a distinct criminal affair or an integral part of the principal offense charged. State v. Hill, 44 N.J. Super. 110, 112 (App. Div. 1957). Where an accused has been convicted for contemporaneous separate offenses which are, in fact or by legislative intent, indistinguishable, then the resulting convictions must be merged. State v. Best, 70 N.J. 56, 61 (1976). If an accused has committed only one offense, he cannot be punished as if for two. Id. at 66; State v. Davis, 68 N.J. 69, 77 (1975).
It is a well established rule in this State that a single conspiracy may not be carved up into smaller conspiracies for the purpose of multiple prosecutions. State v. Louf, 126 N.J. Super. 321, 332 (1973), mod. 64 N.J. 172 (1973). If the alleged conspiracy is in fact but one overall collusive arrangement, it must be treated as such by the prosecution. State v. Ferrante, 111 N.J. Super. 299, 303 (App. Div. 1970).
Here the State's contention is that each count of the indictment specifies a conspiracy in and of itself  that there was no single conspiracy.
A conspiracy is not the commission of the crime which it contemplates, and the conspiracy neither violates nor "arises under" the statute whose violation is its object. As the single continuing agreement, which is the conspiracy, embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes. State v. Louf, supra, 126 N.J. Super. at 337-338.
Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements *419 and hence several conspiracies because it envisages the violation of several statutes rather than one. Id.
Thus, simply put, the question presented here is whether the three agreements specified in the three counts of the indictment are tied together as stages in the formation of one larger all inclusive combination directed to achieving a single unlawful result, or whether, on the contrary, each agreement had its own distinct illegal end  each goal was an end in itself, separate and distinct from the others.
An examination of the facts here reveals that the agreement which was the essence of the conspiracy was that defendant pay Lt. Mazzone money in return for Lt. Mazzone's infliction of bodily harm on the intended victim, Lt. Halliday.
Here, in every practical sense, the facts of this case reveal a single conspiracy, entered into on December 19, 1975, of which the two later agreements were merely parts. All these agreements had as a single goal the infliction of bodily harm on Lt. Halliday. Cf. State v. La Fera, 35 N.J. 75, 80 (1961).
For the above reasons, the second and third counts of the indictment should be merged into the first count and the convictions on counts two and three vacated. State v. Gibson, 150 N.J. Super. 351 (App. Div. 1977).
Defendant also seeks relief by way of an order for a new trial pursuant to R. 3:20-1.
Among the grounds advanced are that the verdict was contrary to the weight of the evidence. Suffice to say that a manifest denial of justice does not "clearly and convincingly" appear here in view of the evidence presented and the content of the tapes. State v. Rodriguez, 141 N.J. Super. 7, 12 (App. Div. 1976).
The next ground alleged by defendant as a basis sufficient for a new trial is that the defense of entrapment applies as a matter of law.
*420 It has been said that entrapment exists when the criminal design originates with police officials, and they implant in the mind of an innocent person the disposition to commit the offense and they induce its commission in order that they may prosecute. State v. Dolce, 41 N.J. 422, 430 (1964).
Judicial abhorrence of entrapment does not mean that police officials cannot afford opportunities or facilities for the commission of criminal offenses. "Artifice and stratagem, traps, decoys and deceptions may be used to obtain evidence of the commission of a crime or to catch those engaged in criminal enterprises." Such devices are necessary weapons in the ever present war on crime and criminals. Id.; State v. Talbot, 71 N.J. 160, 165 (1976).
The law will protect the innocent from being led to crime through the activities of law enforcement officers but it will not protect the guilty from the consequences of subjectively mistaking apparent for actual opportunity to commit crime safely. State v. Dolce, supra.
Defendant argues that although it is conceded that she disliked the intended victim, there is no showing that she had the predisposition to commit the offense. "Predisposition is evidenced by previous conviction of crime, reputation for criminal activities, ready compliance with minimal inducement, or easy yielding to the opportunity to commit the offense." State v. Talbot, supra at 167 (emphasis supplied).
The Supreme Court in State v. Stein, 70 N.J. 369, 391 (1976), held that where there was no indication that the incident in question was other than "a single aberrant episode in defendant's life" and where "it is a matter of pure speculation as to whether defendant had a predisposition" to commit the offense in question, * * * the jury could not find beyond a reasonable doubt that defendant had the necessary predisposition. However, here it is not a matter of pure speculation as to whether defendant had the predisposition to commit the offense in question. Here the jury *421 had available for its consideration the following conversations and statements by defendant:
Mazzone: Well, how much you got to pay for the present?
Lavary: Well, you see, that's not too much of a problem, cause what I want done, I waited many years for. I mean if it's a whole lot then I have to wait a little bit, but, I don't know, I need an idea about how much it would cost. I don't know if she explained it, I don't want a permanent Christmas present, did she explain that to you?
Mazzone: No, why don't you give me a rundown?
Lavary: Well, I just rather it be put out of commission but around to realize it, you know what I mean, cause to me that's so much more appropriate. The other way it's done, it's over with, and you know use it up and it's all gone. Once you use something, its forgotten, but I'd like this one to kind of linger on for years and years, and years, so he'll always remember who gave it to him.
Mazzone: That ain't bad. Understand the Dude's a cop or wears some kind of uniform.
Lavary: Yea.
Mazzone: That makes it extra special.
Lavary: Yes. They immediately start right here, but there's been so many other people that, they could bat their head against the wall for the next 20 years with just a list  it's been a long time comin [sic]. I never had it done before because it was always right here, I mean they knew, I came into a lot of money once before, and that's when I planned to give him his last present, but I couldn't because they watched me like a hawk for almost a year, and it was just no good, now things have lightened up for over a year.

* * * * * * * *
Lavary: I'll meet him on the turnpike, that's not far from my house any way. You don't know how much I appreciate this Billie cause, I'm been waiting a long time, biting my tongue, biding my time, all fall directly in my head, and I feel the time is quite appropriate now, specially being you know, I got such good backing right now.

* * * * * * * *
Mazzone: You want him crippled?
Lavary: I just want him maimed for the rest of his life. Every time he looks at his twisted (expletive) self he'll know somebody who hated him wanted it.
Mazzone: You want him maimed for the rest of his life. What do you mean, legs, arms, eyes, what?
Lavary: Just about everything, I just wanted him (expletive) up.
Mazzone: Who you talking it over with?
Lavary: My old man.
Mazzone: He's ok with just the maiming?
Lavary: I don't want him dead.
*422 Mazzone: No, I mean the old man.
Lavary: Well, it's me who wanted it, he kind of wanted me to forget it for a while because they picked me up once since then, you know, he's afraid of a little heat coming back on me, but I don't care.
Here there was ample evidence from which the jury could find predisposition  "a ready compliance with minimal inducement." The jury was charged as to what constituted entrapment and the jury found entrapment was not in the case. This court, on the basis of the evidence presented in this case, will not disturb that finding.
The final argument advanced by defendant as the basis for a new trial is that the court erroneously charged the jury as to whether a defendant can withdraw from a conspiracy  "negate the conspiracy"  by withdrawal prior to an overt act. The difficulty with this argument lies in the fact that a conspiracy consists of an agreement and, with certain exceptions, an overt act in furtherance of that agreement. State v. Moretti, 52 N.J. 182, 186 (1968). Such intent, coupled with an overt act, is punishable whether or not the contemplated crime is consummated. Id. State v. LaFera, supra, 35 N.J. at 86.
Here there was evidence from which the jury could find an agreement to perform an illegal act. There was evidence from which the jury could find an overt act  that is  defendant's offer of $50 or $100 for expenses to her coconspirator. At that point the crime of conspiracy had been committed. Here there was no credible evidence of a withdrawal prior to an overt act and in any event the conspiracy once committed could not be "negated" by withdrawal.
A conspiracy is presumed to be continued until there is proof of an affirmative act of withdrawal as to one or more members thereof. State v. Farinella, 150 N.J. Super. 61 (App. Div. 1977). Even if there is a withdrawal, culpability still exists for the original conspiracy. Culpability is only ended for additional actions performed in furtherance *423 of the conspiracy. Here there was no evidence that defendant had withdrawn prior to an overt act.
Based on the foregoing reasons, defendant's motion for a new trial is denied.
Defendant's final argument which she advances on this motion is for dismissal of the indictment pursuant to R. 3:10-3, or a judgment of acquittal pursuant to R. 3:18.2.
The question presented by defendant's argument is whether a defendant may be convicted of conspiracy when the conspiracy is between two persons, one of whom is defendant and the other an undercover agent for a law enforcement agency who only pretends to participate in the conspiracy for the purpose of obtaining evidence against the defendant.
The gist of the offense of conspiracy lies not in the doing of the act, nor in effecting the purpose for which the conspiracy is formed, nor in attempting to accomplish that purpose, but in the forming of the scheme or agreement between the parties. State v. Carbone, 10 N.J. 329, 337 (1952); State v. Dennis, 43 N.J. 418, 423 (1964). It is the unlawful purpose upon which they agreed which makes a conspiracy punishable once any overt act is committed in furtherance of it. State v. Moretti, supra. This is so because such unions are vested with a potentiality for evil that renders the plans criminal in themselves and punishable as such if acts are done to effect their object. State v. Carbone, supra, 10 N.J. at 338.
The legislative intent underlying the statute is founded upon the plain fact that a conspiracy is an evil apart from the substantive offense, and at times even a greater evil, for the conspiracy may lead to other substantive offenses of a like sort and perhaps to habitual practices. State v. Oats, 32 N.J. Super. 435, 440 (App. Div. 1954).
The courts of New Jersey have been reluctant to dismiss indictments when arguments similar to defendant's here have been presented to them. The court in State v. Oats, supra. had before it for consideration the issue of whether *424 a conviction for conspiracy on a plea of non-vult should be set aside where the alleged coconspirator was later acquitted. The court held that there was no "manifest injustice" in permitting the conviction to stand, even though the statute required "any 2 or more persons who conspire."
In State v. Goldman, 95 N.J. Super. 50, 52-53 (App. Div. 1967), the court had before it the argument that since a conspiracy involves action of more than one person, a conviction of only one of two conspirators named in an indictment cannot be sustained. The court held that since neither the guilt nor innocence of the coconspirator was settled by the voluntary dismissal as to that defendant, logic did not call for the automatic exculpation of defendant on that basis.
Another court has held that the reversal of the convictions of two of the three conspirators on double jeopardy grounds does not mandate that the conviction of the third conspirator cannot stand. State v. Louf, supra, 126 N.J. Super. at 345.
The court reasoned that the reversals did not mean that the three had not participated in a conspiracy. It merely barred their prosecution for that conspiracy. Id. The court in Louf concluded that the rule "that the acquittal of all save one of alleged conspirators results in the acquittal of all applies to acquittals on the merits." The philosophy which would exculpate a coconspirator who alone may stand convicted while his coconspirator was acquitted is not applicable where no disposition on the merits has been made of the charges against the accused.
The court in State v. Furey, 128 N.J. Super. 12, 23 (App. Div. 1974), held that the presence of an unindicted coconspirator who had testified under a grant of immunity was sufficient to sustain a conviction for conspiracy against a coconspirator.
The fact that legal impossibility was available as a defense for one of two coconspirators will not necessarily free the other conspirator from liability. State v. Stocksdale, *425 138 N.J. Super. 312, 318 (Law Div. 1975). Factual impossibility was also held to be insufficient to dismiss an indictment for conspiracy. State v. Moretti, supra, 52 N.J. at 186-187.
The court in State v. Palumbo, 137 N.J. Super. 13, 19 (App. Div. 1975), found that legal impossibility to commit the substantive crime will not preclude a conviction for conspiracy to commit that crime. The court there cited State v. Moretti, supra, as holding that
Our examination of these authorities convinces us that the application of the defense of impossibility is so fraught with intricacies and artificial distinctions that the defense has little value as an analytical method for reaching substantial justice. Many courts hold that where there is a "legal impossibility" of completing the substantive crime the defendant cannot be guilty of an attempt, but where there is "factual impossibility" the accused may be convicted. We think the effort to compartmentalize factual patterns into these categories of factual or legal impossibility is but an illusory test leading to contradictory, and sometimes absurd, results * * * [at 189]
The court in State v. Palumbo concluded that
The position urged upon us by defendant would, if accepted, yield the absurd result envisioned by the court in Moretti.
Thus the general rule to be drawn from the above cases is that little short of acquittal of the other accused coconspirators will automatically result in acquittal of the remaining defendant charged with conspiracy. State v. Oats, supra, holds that even acquittal of the coconspirator will not be sufficient at all times.
Defendant cites in support of her position State v. Collins, 120 N.J. Super. 48 (Law Div. 1972). The court there had entered an order for a judgment notwithstanding the verdict on behalf of defendant. The jury had returned verdicts of not guilty against his two coconspirators. The State had contended that the jury must have found that defendant had conspired with an undercover informant of a *426 federal law enforcement agency  not named in the indictment  who had participated in planning and executing the crimes in order to obtain information. The court held (at 52-53  emphasis supplied) that
It was the State's position, supported by all of the evidence on the subject, that Powell was only a pretending conspirator, his true purpose being to get evidence of the commission of crime by the defendants. Therefore defendant La Vecchia probably could not have been convicted of conspiring with Powell alone even if he had been so charged in the indictment. State v. Dougherty, 88 N.J.L. 209 (E. & A. 1915). See 72 Harv. L. Rev. 926-927 (1959) and 1 Wharton's Criminal Law and Procedure, § 83 at 180 (1957), where it stated:
To be a conspirator, the defendant must have criminally intended to become a party to the conspiracy. It is accordingly held that a person who pretends to join a conspiracy in order to trap the criminals is not a co-conspirator.
The court in Collins and defendant here both rely on State v. Dougherty, 88 N.J.L. 209 (E. & A. 1915). In that case an undercover police detective, Harris, assigned to ferret out official misconduct, had offered bribes to city officials for favors. This resulted in a conspiracy indictment. The court there stated that:
The question is the much simpler one, whether a conspiracy originated by "Harris" under employment of the law officers of the state, with Phoebus as either stool pigeon or go-between, for the well meant purpose of testing the virtue of public officials and preventing injury to the public by exposing and bringing them to punishment if they proved corrupt, was a conspiracy to pervert the due administration of the laws relating to the municipal government of Atlantic City. If it was not, the defendants are not guilty as charged, however reprehensible their conduct and character may have been. Since the indictment charges but one conspiracy, and "Harris" was a necessary party to the conspiracy proved, the prime mover therein and the man who was to and did furnish the money, and since the conspiracy had no existence without him, the only conspiracy for which the defendants could be convicted is that organized by "Harris." Unless that conspiracy is criminal, the defendants are not guilty as charged. If it is criminal, "Harris" is also guilty. To so hold, it would be necessary to hold that "Harris'" act was a perversion of the due administration of the law. To avoid that absurdity, it is necessary to hold that the conspiracy was not a *427 conspiracy to pervert the due administration of the law as charged in the indictment. It was in fact an arrangement to secure the due administration of the law by demonstrating the readiness of the councilmen to be corrupted, in a made-up plan not meant to be executed, in order to prevent by exposure similar corruption in the genuine legislation of the city. Without the complicity of "Harris", the conspiracy charged is not proved; with him it ceases to be a conspiracy to pervert the due administration of the laws, and is no crime. [at 211-212]
The court concluded that it was "less reluctant to reach this result than we would otherwise be, for the reason that the State sought by indicting the defendants for conspiracy to make available statements made by "Harris" and Phoebus in the absence of the other defendants even before they had come into the conspiracy, and by Phoebus after the object of the conspiracy had been obtained."
State v. Dougherty has never been overruled, but research has revealed only two cases that cite it for the proposition stated above. See State v. Collins, supra; State v. Sabato, 91 N.J.L. 370, 372 (Sup. Ct. 1918).
The decision in State v. Dougherty can be strongly questioned in the light of recent Supreme Court decisions in this state. In State v. Moretti, supra, three defendants were found guilty of conspiracy to commit an abortion on Sylvia Swidler. Swidler was a special investigator for the Essex County prosecutor's office. If the reasoning of Dougherty is still valid, the convictions of the defendants in Moretti would have been overturned. The deciding vote in Dougherty was cast by the concurring opinion of Justice Minturn, who concurred in the result but who reasoned that the result should have been reached because the defense of entrapment was present.
This court concludes that State v. Dougherty has in effect been overruled by Moretti and that if Dougherty were to be decided today it would be decided on the basis of entrapment. See State v. Stein, supra.
Research reveals that the position urged by defendant is followed by the majority of jurisdictions in this country and *428 by a number of commentators. See Moore v. State, Miss., 290 So.2d 603, 605 (Sup. Ct. 1974); Johnson v. Sheriff, Clark Cty., Nev., 532 P.2d 1037, 1038 (Sup. Ct. 1975); People v. Atley, 392 Mich. 298, 220 N.W.2d 465, 473 (Sup. Ct. 1974); Sears v. United States, 343 F.2d 139 (5 Cir.1965); Delaney v. State, 164 Tenn. 432, 51 S.W.2d 485, 487 (Sup. Ct. 1932); 1 Wharton's Criminal Law & Procedure, "Conspiracy," § 83 at 180 (cited in State v. Collins, supra); 15A C.J.S. Conspiracy § 37 at 731.
The reasoning common to the above-cited authorities is that
If one person only feigns acquiescence in a proposal of another to pursue an unlawful enterprise, there is no union or concert of wills * * * where one of two persons who has allegedly conspired to do an illegal act is an officer who acted in the discharge of his duties, or a government informer who secretly intended to frustrate the conspiracy, the other person cannot be convicted of conspiracy.
However, the modern view is that a person can be indicted for conspiring with one "who only feigns acquiescence," e.g., an undercover agent. The modern view is termed an "unilateral approach" to conspiracy and has been adopted in a number of jurisdictions.
The Supreme Court of Minnesota, in State v. St. Christopher, 305 Minn. 226, 232 N.W.2d 798 (1975), had before it for consideration an appeal by defendant from a conviction of conspiracy to commit murder. The evidence indicated that the only party with whom he conspired never intended to aid defendant but merely feigned agreement while cooperating with the police. Defendant in effect argued that since "conspiracy is the agreement of two or more to effect an unlawful purpose, two people cannot agree unless they both intend to carry out the purpose which is stated to be the object of their combination. Therefore, there is no agreement, and consequently no conspiracy, where one of the two never intends to carry out the unlawful purpose." Id., 232 N.W.2d at 801.
*429 The court ruled that the above belief was unsound. It noted that
One criticism by a number of commentators of the rule followed in the cited cases is that the courts have reached their conclusion by using as a starting point the definition of conspiracy as an agreement between two or more persons, a definition which was framed in cases not involving the issue. As one commentator put it, "if a conspiracy is arbitrarily defined as `an agreement of intentions and not merely a language (the intentions being unlawful)' the answer to the problem is undoubtedly that where there is no such agreement of intentions then there is no conspiracy." Fridman, Mens Rea in Conspiracy, 19 Modern L. Rev. 276, 278. In other words, the basis for the rule is a strict doctrinal approach toward the conception of conspiracy as an agreement in which two or more parties not only objectively indicate their agreement but actually have a meeting of the minds.
Addressing the rule to be applied as a policy issue, a number of commentators have come to the conclusion that there should be no requirement of a meeting of the minds. Thus, Fridman points to cases holding that factual impossibility is no defense to a charge of attempt to commit a crime and argues that, because of close connections between the origins and purposes of the law of conspiracy and of attempt, a similar rule should obtain in conspiracy. Specifically, he argues that "[t]he fact that, unknown to a man who wishes to enter a conspiracy to commit some criminal purpose, the other person has no intention of fulfilling that purpose ought to be irrelevant as long as the first man does intend to fulfill it if he can" because "a man who believes he is conspiring to commit a crime has a guilty mind and has done all in his power to plot the commission of an unlawful purpose." Id. at 282, 283.
Professor Glanville Williams makes a somewhat similar argument, basing his opinion on the fact that conspiracy, like attempt, is an inchoate crime and that it is the act of conspiring by a defendant which is the decisive element of criminality, for it makes no difference in logic or public policy that the person with whom the defendant conspires is not himself subject to prosecution, Williams, Criminal Law  The General Part, § 157(a).
The court there found additional support for the proposition that there is no requirement of a meeting of the minds in the Model Penal Code. (§ 5.03(1) and comments thereto.) The relevant Model Penal Code section takes the approach that it is "immaterial to the guilt of a conspirator whose culpability has been established that the person or all of *430 the persons with whom he conspired have not been or cannot be convicted." Id., 305 Minn. at ___, 232 N.W.2d at 801-803.
The court there found the reasoning of those authorities persuasive and concluded that defendant was properly convicted of conspiracy.
Other jurisdictions have adopted this "unilateral" approach. In Saienni v. State, Del., 346 A.2d 152 (Sup. Ct. 1975), defendant argued on appeal he could not be guilty of conspiracy with a police informer and an undercover agent, both of whom had no intention of committing the crime. The court found the argument to be without merit, citing 11 Del. C. § 523(2), which states:
It is no defense to a prosecution for criminal conspiracy that, because of irresponsibility or other legal incapacity or exemption, or because of unawareness of the criminal nature of the agreement or the conduct contemplated or of the defendant's criminal purpose, or because of other factors precluding the mental state required for commission of the conspiracy or the crime contemplated, one or more of the defendant's co-conspirators could not be guilty of the conspiracy of the crime contemplated.
The Delaware Supreme Court noted that
The commentary on § 523 is enlightening:
Section 523 takes what the Model Penal Code commentary calls a "unilateral approach." That is, attention is focused on each individual's culpability. He has no defense which rests solely on another party's incapacity, irresponsibility, or obedience to law. Thus if he solicits a person to commit an offense, his crime is complete at that point, and it is irrelevant to his own liability that the person solicited does not commit the offense or could not be found guilty of committing the offense because of some legal incapacity or irresponsibility, or because he did not know that the conduct solicited was criminal.
New York has adopted Penal Law § 105.30, which reads as follows:
It is no defense to a prosecution for conspiracy that, owing to criminal irresponsibility or other legal incapacity or exemption, or *431 to unawareness of the criminal nature of the agreement or the object conduct or of the defendant's criminal purpose or to other factors precluding the mental state required for the commission of conspiracy or the object crime, one or more of the defendant's co-conspirators could not be guilty of conspiracy or the object crime. [Emphasis supplied]
In People v. Cardosanto, 84 Misc.2d 275, 375 N.Y.S.2d 834, 835-836 (Sup. Ct. 1975), the trial court there had before it the argument that since the police officers who "agreed" to help defendant commit the acts which formed the basis of a conspiracy count in an indictment never intended to commit the proposed criminal acts, and since conspiracy requires a corrupt common intent in the minds of two or more people, that count of the indictment should be dismissed. The court there held that the phrase in § 105.30  "other factors precluding the mental state required for commission of conspiracy or the object crime" was directed towards precisely that argument and denied the motion.
As noted by the Supreme Court of Minnesota in State v. St. Christopher, supra at 232 N.W.2d 801, one commentator has stated that because factual impossibility is no defense to a charge of attempt to commit a crime, a similar rule should apply in the law of conspiracy because of the close connection between the origins and purpose of the law of conspiracy and attempt.
Our Supreme Court has held that "the impossibility that defendant's conduct will result in the consummation of the contemplated crime is not as pertinent in a conspiracy case as it might be in an attempt." State v. Moretti, supra, 52 N.J. at 187.
Here defendant was found guilty of conspiring with an undercover agent of the Maryland State Police. She now seeks to assert as a complete defense the fact that since her coconspirator could not be guilty of committing the crime, neither could she. She argues that since Lt. Mazzone did not intend to agree, it is irrelevant that she did *432 intend to agree, since a conspiracy requires a common intent in the minds of both conspirators.
Closer examination of defendant's position reveals that its basis is "factual impossibility." Cf. State v. Moretti, supra. She argues that Lt. Mazzone's status as an undercover police officer makes a conspiracy an impossibility since the facts reveal that Lt. Mazzone only pretended to enter the conspiracy and that her mistake as to his actual intent is sufficient to vitiate the conspiracy.
In this case defendant's intent to have bodily harm inflicted upon Lt. Halliday is clear; believing Lt. Mazzone to intend the same result, she did all that was in her power to bring about the criminal result she desired. The fact that Lt. Mazzone was an undercover agent does not diminish the criminal quality of defendant's intent. The consequence which defendant intended was a result which, if successful, would have been a crime. The fact that Lt. Mazzone was an undercover agent should in no way negate defendant's clearly manifested intent to commit a criminal act. State v. Moretti, supra at 190. It should be immaterial to her guilt that the person with whom she is alleged to have conspired might have a complete defense in that he did not have the prerequisite intent.
There are cases in New Jersey which appear to support defendant's claim that the corrupt intent must be common to the two coconspirators. For instance, the court in State v. Carbone, supra, 10 N.J. at 337, stated that "The agreement is an advancement of the intention which each has conceived in his mind." But this court is satisfied that the statements by the various New Jersey courts as to what constitutes an agreement sufficient for a conspiracy were made in factual situations where that question was not at issue.
This court concludes that the question presented here  what is the nature of an agreement sufficient to establish a conspiracy  is one of novel impression in New Jersey. Since the question has never been expressly adjudicated in *433 New Jersey, this court is free to do so. State v. Sheppard, 125 N.J. Super. 332, 335 (App. Div. 1973), cert. denied 64 N.J. 318 (1973). (As indicated above this court is satisfied that State v. Dougherty has been implicitly overruled by State v. Moretti.)
This court holds that when the consequences sought by defendant are unlawful, it is no defense to a charge of conspiracy that she could not reach her goal because of circumstances unknown to her, or that the person with whom she conspired has not been or cannot be convicted. This court's conclusion is in accord with the proposed New Jersey Penal Code, § 2C:5-2. The comments to the Code are instructive as to why this "unilateral approach" is taken.
4. The Conspiratorial Relationship: Section 2C:5-3a. The definition of the Code departs from the traditional view of conspiracy as an entirely bilateral or multilateral relationship, the view inherent in the standard formulation case in terms of "two or more persons" agreeing or combining to commit a crime. Attention is directed instead to each individual's culpability by framing the definition in terms of the conduct which suffices to establish the liability of any given actor, rather than the conduct of a group of which he is charged to be part  an approach which the Drafters of the Code designate as "unilateral." (MPC T.D. 10, p. 104 (1960).)
One consequence of this approach is to make it immaterial to the guilt of a conspirator whose culpability has been established that the person or all of the persons with whom he conspired have not been or cannot be convicted. Present law frequently holds otherwise, reasoning from the definition of conspiracy as an agreement between two or more persons that there must be at least two guilty conspirators or none. The problem arises in a number of contexts.

* * * * * * * *
Second: Where the person with whom the defendant conspired secretly intended not to go through with the plan. In these cases it is generally held that neither party can be convicted because there was no `agreement' between two persons. Under the unilateral approach to the [Code], the culpable party's agreement was feigned. He has conspired within the meaning of the definition, in the belief that the other party was with him, apart from the issue of entrapment often presented in such cases, his culpability is not decreased by the other's secret intention. True enough, the project's chances of success have not been increased by the agreement; indeed, its doom may have been sealed by this turn of events. But the major basis of conspiratorial liability  the unequivocal evidence of a firm purpose to commit a crime  remains the same. *434 The result would be the same under the Code if the only co-conspirator established a defense of renunciation under Section [2C:5-2f].

* * * * * * * *
Our cases speak in traditional terms of defining conspiracy in terms of "an agreement between two or more persons." State v. Carroll, 51 N.J. 102 (1968); State v. Dennis, 43 N.J. 418 (1964); State v. Carbone, supra; State v. Cormier, 46 N.J. 494 (1966); State v. Curcio, 23 N.J. 521, 528 (1957). There are indications in our cases, however, that the results reached by adoption of the Code's "unilateral" view are consistent with our Courts' views on conspiracy. In State v. Goldman, 95 N.J. Super. 50 (App. Div. 1967), the Court held that the conviction of one conspirator after a dismissal of the indictment as to the only other conspirator did not prevent conviction of the first. This is the result which is set forth in paragraph "Third," quoted in the Introduction, above, as the one we believe proper. A strict "bilateral" view would, however, lead to a contrary result. Further, the result set forth in paragraph "Second," above, is consistent with our Supreme Court's decision in State v. Moretti, * * *.
Moretti is not directly on point but the same policies which lead to rejection of the impossibility defense  i.e., evaluation of guilt from the point of view of the individual actor  lead to the Code's view here. [2 New Jersey Penal Code, Commentary at 131-32 (1971)]
To hold otherwise here would mock justice, interfere with the interest of society in repressing crime, and lead to absurd results. This court finds, as evidenced by the proposed New Jersey Penal Code, that a unilateral approach to the crime of conspiracy is appropriate and fully justified in New Jersey. This approach requires that the evaluation of guilt in New Jersey when conspiracy is charged be from the point of view of the individual actor. The court finds this interpretation fully consistent with modern New Jersey cases, not violative of any legislative directive and consistent with the increased danger and social harm inherent in the crime of conspiracy. The "intricacies and artificial distinctions" urged by defendant thwart rather than serve substantial justice and are hereby rejected. State v. Moretti, supra; State v. Palumbo, supra.
For the above reasons, the motion to dismiss the indictment or grant judgment notwithstanding the verdict is denied.