158 N.J. Super. 89 (1978)
385 A.2d 878
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DONALD MAZUR, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 7, 1978.
Decided March 29, 1978.
*91 Before Judges LYNCH, KOLE and PETRELLA.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Messrs. Rabner, Weil & Allcorn, designated counsel; Mr. Harold Rabner on the brief).
*92 Mr. John J. Degnan, Attorney General, attorney for respondent (Mr. William F. Hyland, former Attorney General and Mr. Frederick S. Cohen, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant, an Atlantic City police officer, was indicted for conspiracy with 24 other police officers of that city and with one Lee Cohn to corruptly engage in misconduct in public office. The substance of the charge was that the officers agreed to afford to Cohn preferential treatment in enforcement of state laws and city ordinances with respect to three Atlantic City hotels which he owned. N.J.S.A. 2A:85-1. Defendant was also individually charged in five other counts of the 73 count indictment with unlawfully taking money in violation of N.J.S.A. 2A:105-1.
After a jury trial defendant was convicted of the conspiracy charge and four of the counts charging extortion. The fifth count charging defendant with that offense had previously been severed by the trial judge. Defendant was sentenced on the conspiracy count to a suspended nine-month term in the Atlantic County jail and fined $1,000. He was also given a suspended $1,000 fine on each of the remaining four counts of extortion.
On appeal defendant contends:
POINT I: The trial court committed plain error by charging the jury so as to require conviction of the defendant of conspiracy based upon an agreement between the defendant and Lee Cohn (not raised below);
POINT II: The court committed plain error by failing to define the critical element of criminal intent with respect to any counts of the indictment (not raised below);
POINT III: The trial court committed plain error in failing to charge the jury that moneys allegedly received by the defendant had to be given and understood by him to be in return for performance of his official duties (not raised below);
POINT IV: The trial court erred in denying defendant's motion for acquittal on counts XXV and XXVIII;
*93 POINT V: The trial court's limitation on the number of defendant's character witnesses constituted reversible error in violation of N.J. Rule of Evidence 47 and U.S. Constitution Amend. 6 and N.J. Constitution Art. I, Paragraph 10;
POINT VI: The trial court committed prejudicial error by not permitting the State's chief witness to be impeached by prior convictions of assault and battery and assault and battery on a police officer;
POINT VII: The trial court's limitation on cross-examination of Lee Cohn, State's chief witness and of Richard Williams, on Cohn's interest and motive in testifying violated defendant's right to a fair trial and confrontation of witnesses guaranteed by Amendment 6, U.S. Constitution;
POINT VIII: The trial court's limitation of cross-examination of Lee Cohn relating to the defendant's assertion that payments were loans violated defendant's constitutional right to cross-examination and trial by jury;
POINT IX: The court erred in denying defendant's pretrial motion to dismiss the indictment on the grounds that the State engaged in invidious discriminatory and selective prosecution upon an arbitrary classification;
POINT X: The trial of defendant's indictment in Ocean County violated his constitutional rights to jury trial and to a fair trial;
POINT XI: The trial record read as a whole demonstrates that the defendant did not receive a fair trial.
We find no merit in any of defendant's contentions except Point I, Point VI and Point VII. We find reversible and plain error under Point I (the charge of conspiracy) and reversible error under Point VII (limitation of cross-examination of Cohn) and Point VI (defendant's attempt to impeach Cohn's testimony by reason of an alleged prior conviction in Maryland of assault and battery upon a police officer). The other points require no discussion. R. 2:11-3(e)(2).

I. The charge on conspiracy

In charging the jury on the crime of conspiracy the trial judge stated that the indictment charged that "Donald Mazur and Anthony Nicastro * * * did conspire, confederate, *94 and agree together with each other, then and there being members of the Atlantic City Police Department and with Lee Cohen [sic] * * *" to engage in misconduct in office. He further noted, "Now, the defendant is basically charged with conspiring with one Anthony Nicastro and Lee Cohen [sic] to commit the offense of what is called `misconduct in office,'" and added "The State must only prove that the defendant conspired with someone else to commit that crime." No objection was raised with regard to the jury charge.
Nevertheless, defendant now claims that the trial judge's instructions permitted the jury to find defendant guilty of conspiracy if it found that defendant "agreed" with Cohn to commit the substantive offense. This, says defendant, is error because Cohn was acting at the time as a government agent and thus could not have been a "co-conspirator." Because, as we have noted, no objection to the charge was raised below, our inquiry must be to determine whether the charge constituted plain error under R. 2:10-2.
The State's testimony revealed the following facts. On March 15, 1973 Cohn applied to the Atlantic City Department of Revenue and Finance for a mercantile license to operate the Princeton Hotel which he had recently purchased. Before such licenses are granted the applications are sent to the Department of Public Safety where they are submitted for police, fire, electrical and building inspections. When these routine checks are completed the applications and inspection reports are returned to the Department of Revenue and Finance for final action. In general it requires approximately "a week to ten days" to process an application.
However, after his license application was submitted Cohn became aware of "some problems" in obtaining the license and he spoke with Atlantic City Police Officer Anthony Nicastro (a/k/a "Meatball") about the difficulty. Cohn told Nicastro that Atlantic City Police Sergeant James F. Barber, who was in charge of investigating retail licenses, was delaying the police investigation of his application because of prior "financial dealings" they had undertaken together.
*95 Thereafter, on March 23, 1973, Cohn met with Atlantic County Prosecutor Richard Williams to discuss any assistance which Cohn might render in investigating official corruption in Atlantic City. Williams told Cohn that any information he gave regarding "payoffs" would not be used against him. And, as Williams said: "I also indicated that with regard to a general investigation which we had, that I was not interested in pursuing that. That general investigation related to the general operation of [Cohn's] hotels and was not necessarily criminal in nature."
After these conversations Detective William Wrotniewski of the New Jersey State Police, on April 4, 1973, equipped Cohn with an electronic transmitter and told him "to carry out his business as he normally would." Wrotniewski would monitor and record Cohn's conversations. That evening Cohn met with defendant Mazur, an Atlantic City police sergeant. Mazur told Cohn that he would speak with Clair Ordelli, Deputy Commissioner of Public Safety in Atlantic City, to see if she could "find something out" concerning his license application. He also indicated that Nicastro spoke with Barber and that Barber "don't have nothing against" granting Cohn the mercantile license. Cohn told defendant to temporarily "hold off" speaking with Ordelli. Thereafter, he gave defendant five dollars, noting that, "[f]ive dollars won't break me, Don."
At some point after this conversation Cohn met again with defendant and agreed to give him $500 to intervene with Ordelli. Defendant said he would see Ordelli. Thereafter, on April 12, 1973 the police department submitted its report on Cohn's license application and the Commissioner of Revenue and Finance approved the license.
Cohn and defendant met the next day in Cohn's office at the Princeton Hotel. Detective Wrotniewski monitored the conversation. During the course of that conversation defendant admonished Cohn not to tell anyone how he had received the license and Cohn thereupon passed to defendant a $250 installment on the agreed figure of $500.
*96 Over the next few weeks there followed several other monitored conversations between defendant and Cohn, and Cohn and defendant Nicastro, concerning Cohn's problems in obtaining other licenses for his hotels. The conversations detailed the efforts of defendant and Nicastro to assist Cohn in securing the licenses, in return for which Cohn gave defendant additional money. It appeared that the money which Cohn passed to defendant had been supplied to him by the State.
It is apparent from the foregoing review of the evidence that Cohn was acting as an agent for the prosecution. The question, then, is whether defendant could be found guilty of conspiracy with Cohn who was a government agent at the time and thus never formed an intent on his part to enter a conspiratorial relationship and never "agreed" on his part to embark on a criminal enterprise.
In State v. Dougherty, 88 N.J.L. 209 (E. & A. 1915), the Court of Errors and Appeals reversed a conspiracy conviction where defendant's alleged coconspirator was an undercover police agent. The agent, one Harris, approached defendants, Atlantic City public officials, and promised them money if they would vote for an ordinance ostensibly in the agent's interests. Upon apprehension, defendants were convicted of conspiracy with Harris to "pervert the due administration of the law." Five members of the 11-member court voted to reverse, noting:
Since the indictment charges but one conspiracy, and "Harris" was a necessary party to the conspiracy proved, the prime mover therein and the man who was to and did furnish the money, and since the conspiracy had no existence without him, the only conspiracy for which the defendants could be convicted is that organized by "Harris." Unless that conspiracy is criminal, the defendants are not guilty as charged. If it is criminal, "Harris" is also guilty. To so hold, it would be necessary to hold that "Harris'" act was a perversion of the due administration of the law. To avoid that absurdity, it is necessary to hold that the conspiracy was not a conspiracy to pervert the due administration of the law as charged in the indictment. It was in fact an arrangement to secure the due administration of the law by demonstrating the readiness of the councilmen *97 to be corrupted, in a made-up plan not meant to be executed, in order to prevent by exposure similar corruption in the genuine legislation of the city. Without the complicity of "Harris," the conspiracy charged is not proved; with him it ceases to be a conspiracy to pervert the due administration of the laws, and is no crime. [at 211-212]
In a concurring opinion, Justice Minturn voted for reversal on the theory that the government agent entrapped the defendants. Id. at 216.
In State v. Collins, 120 N.J. Super. 48 (Law Div. 1972), defendant sought to set aside a conspiracy conviction where his two alleged coconspirators had been acquitted. The State maintained that in finding defendant guilty the jury must have concluded that he conspired with another person, a police agent named Powell. The court rejected this contention and, after noting that "[i]t is impossible for one person to conspire with himself," declared:
It was the State's position, supported by all of the evidence on the subject, that Powell was only a pretending conspirator, his true purpose being to get evidence of the commission of crime by the defendants. Therefore defendant La Vecchia probably could not have been convicted of conspiring with Powell alone even if he had been so charged in the indictment. State v. Dougherty, 88 N.J.L. 209 (E. & A. 1915). See 72 Harv. L. Rev. 926-927 (1959) and 1 Wharton's Criminal Law and Procedure, § 83 at 180 (1957), where it is stated:
To be a conspirator, the defendant must have criminally intended to become a party to the conspiracy. It is accordingly held that a person who pretends to join a conspiracy in order to trap the criminals is not a co-conspirator. [at 52-53]
Cf. State v. Sabato, 91 N.J.L. 370, 372 (Sup. Ct. 1918).
These cases suggest that in New Jersey one may not be convicted of conspiracy where the "co-conspirator" is a police agent who never intended to enter a criminal agreement. In such circumstances, the feigning party is simply not conspiring to commit a crime. Such a rule prevails in the majority of jurisdictions which have considered the question. *98 See, e.g., United States v. Chase, 372 F.2d 453, 459 (4 Cir.), cert. den. 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed. 2d 626 (1967); Sears v. United States, 343 F.2d 139, 142 (5 Cir.1965); People v. Smyers, 398 Mich. 635, 248 N.W.2d 156, 157 (Sup. Ct. 1976); Johnson v. Sheriff, Clark Cty., 91 Nev. 161, 532 P.2d 1037, 1038 (Sup. Ct. 1975); People v. Atley, 392 Mich. 298, 220 N.W.2d 465, 471 (Sup. Ct. 1974); Moore v. State, 290 So.2d 603, 605 (Miss. Sup. Ct. 1974); Delaney v. State, 164 Tenn. 432, 51 S.W.2d 485, 486-487 (Sup. Ct. 1932); see 1 Wharton, Criminal Law and Procedure § 83 (1957); "Developments in the Law  Criminal Conspiracy," 72 Harv. L. Rev. 920, 926-927 (1959); 15A C.J.S., Conspiracy § 37 (1967); see also, O'Brien v. United States, 51 F.2d 674 (7 Cir.1931); United States v. Wray, 8 F.2d 429 (D.C. Ga. 1925). The rationale underlying these decisions is that "[a] conspiracy requires an agreement by at least two people. When one of the two persons merely pretends to agree, the other party, whatever he may believe, is in fact not conspiring with anyone." Johnson v. Sheriff, Clark Cty., supra at 1038.
However, despite Dougherty and Collins, and the persuasive authority in other jurisdictions, there is a recent New Jersey decision to the contrary. In State v. Lavary, 152 N.J. Super. 413 (Law Div. 1977), the court upheld defendant's conviction for conspiracy to commit atrocious assault and battery upon a police officer where it was shown at trial that she unwittingly had hired an undercover police officer to severely beat another officer. The court held that the Dougherty decision had been effectively overruled by State v. Moretti, 52 N.J. 182, 186, cert. den. 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968), and thereafter declared:
This court holds that when the consequences sought by defendant are unlawful, it is no defense to a charge of conspiracy that she could not reach her goal because of circumstances unknown to her, or that the person with whom she conspired has not been or cannot be convicted. This court's conclusion is in accord with the proposed New Jersey Penal Code, § 2C:5-2. The comments to the Code are instructive as to why this "unilateral approach" is taken. [at 433] *99 In reaching this conclusion the court analogized defendant's contention to a claim of factual impossibility. Id. at 432.
We respectfully disagree with the Lavary decision on this issue. First, in State v. Moretti, supra, the Supreme Court held that defendants could be convicted of conspiracy to commit an abortion even though the intended subject was a police agent who was not pregnant. The court, after noting that the "essence" of a conspiracy is the joining together of the conspirators with an unlawful intent, declared: "That, unknown to [defendants], Mrs. Swidler was not in a condition to be aborted in no way negates their clearly manifested intent to commit a criminal act. Such concerted intent, coupled with an overt act, is punishable whether or not the contemplated crime is consummated." 52 N.J. at 186. Moretti, then, clearly stands for the proposition that even though the object of the conspiracy is unattainable, the fact that the parties agreed to commit a crime still renders them subject to prosecution for conspiracy. Thus, if anything, Moretti affirms the proposition that the essence of conspiracy is "concerted intent." As such, that decision seems perfectly compatible in spirit and philosophy with Dougherty.
Second, the Lavary court's view that those New Jersey cases which emphasize that "the corrupt intent must be common to the two conspirators" did not deal with the question of a feigning party, overlooks N.J.S.A. 2A:98-1. That statute declares: "Any 2 or more persons who conspire * * * to commit a crime * * * [a]re guilty of a conspiracy * * *" (emphasis supplied). Thus, the statute which defines the crime of conspiracy requires a finding that the conspirators had a shared objective. In People v. Ambrose, 28 Ill. App.3d 627, 329 N.E.2d 11 (App. Ct. 1975), the court curtly rejected the contention that a statute similar to N.J.S.A. 2A:98-1 encompasses a lone conspirator:
The state would have this court read the conspiracy statute of the Illinois Criminal Code to hold that only the intent of the individual *100 defendant is necessary in a conspiracy case. The state feels that it is not an element of the conspiracy to prove that the co-conspirator Ford needed to have the intent to agree with the defendant and the intent to carry out the scheme. With this we cannot agree. Changes in our criminal code in recent years provide that the co-conspirators do not have to be prosecuted or even be guilty of an offense in order to convict a defendant of conspiracy. Yet, the older case law requiring two or more people for a conspiracy is still valid. It would be absurd to claim a conspiracy could be entered into by one individual alone. By the terms of our statute the crime of conspiracy involves an agreement. The definition of agreement implies an intent to agree between a minimum of two people. Therefore the state's contention that the intent of a co-conspirator to agree with the defendant to commit armed robbery is unnecessary is fallacious. [329 N.E. 2d at 14]
Indeed, New Jersey cases have repeatedly emphasized that in a conspiracy prosecution, it is the "agreement" and the "combination" which constitute the essence of the offense. State v. Carroll, 51 N.J. 102, 105 (1968); State v. Cormier, 46 N.J. 494, 508 (1966); State v. Dennis, 43 N.J. 418, 423 (1964); State v. Hutchins, 43 N.J. 85, 92 (1964); State v. La Fera, 35 N.J. 75, 86 (1961); State v. Carbone, 10 N.J. 329, 337 (1952); State v. Furey, 128 N.J. Super. 12, 23 (App. Div. 1974). In Carbone, the court declared:
So long as such a design rests in intention only, it is not indictable. When two agree to carry it into effect, the very plot is an act in itself, and the act of each of the parties, promise against promise, actus contra actum, capable of being enforced if lawful, punishable if for a criminal object or for the use of criminal means. The agreement is an advancement of the intention which each has conceived in his mind; the mind proceeds from a secret intention to the overt act of mutual consultation and agreement. [10 N.J. 336-337; emphasis supplied]
To hold that such strong and oft-repeated language is a consequence of the court's failure to foresee the fact pattern at bar seems unwarranted. Rather such language describes the heart of the crime of conspiracy. Also, the Lavary court's reliance on State v. Goldman, 95 N.J. Super. 50 (App. Div.), certif. den. 50 N.J. 288 (1967), to show that one *101 may be convicted of conspiracy where the other coconspirators have not been convicted, is not persuasive since that case dealt with a circumstance in which there was no disposition on the merits of the other parties' culpability. Hence, it is distinguishable.
Third, Lavary's reliance on State v. St. Christopher, 305 Minn. 226, 232 N.W.2d 798 (Sup. Ct. 1975), and People v. Cardosanto, 84 Misc.2d 275, 375 N.Y.S.2d 834 (Sup. Ct. 1975), is unwarranted. In each of those cases, and in Saienni v. State, 346 A.2d 152 (Del. Sup. Ct. 1975), relied on by the State herein, the courts were bound to follow conspiracy statutes which specifically permitted the jury to find a conspiracy existed, even though the alleged co-conspirator did not have the requisite mental state. See, e.g., Minn. St. 609.175, subd. 2; 11 Del C. § 523(b); N.Y. Penal Law § 105.30. Because the current New Jersey statute is not susceptible of such an interpretation and contains no language encompassing a lone conspirator, such cases are without precedential value.
Lastly, as Lavary notes, under the proposed New Jersey Penal Code, § 2C:5-3a takes a "unilateral" approach to conspiracy prosecutions. As such, the proposed law focuses on the culpability of each party individually, regardless of the intentions or characteristics of the other parties. See 2 Final Report of the New Jersey Criminal Law Revision Commission, Commentary (1971) at 131. However, a comparison of the conspiracy statute, as presently written, with the statute as proposed, reveals that the two are markedly different. Therefore, the proposed Model Code cannot now be applied.
We therefore conclude that it was error for the trial judge to instruct that the jury could convict defendant of conspiracy if it found that he "agreed" with Cohn, a government informer, to engage in misconduct in office.
Once it is accepted that the trial judge erred in instructing the jury, it must be determined whether such error was clearly capable of producing an unjust result under R. 2: *102 10-2. While it is true that the jury might have held defendant guilty of conspiracy with Nicastro alone, it is impossible to know whether the conspiracy conviction was, in fact, so founded. The point is that under the court's charge the jury could have found that he conspired with Cohn alone. Further, the great preponderance of the evidence adduced below relates exclusively to conversations between Cohn and defendant. Thus, it seems quite likely that the jury found that defendant conspired with Cohn.
In Sears v. United States, supra, the court was confronted with a similar problem. There, an informer approached defendant, a local police officer, and asked his permission to operate a still. Defendant agreed and the informer and two others, Johnson and Wright, began the illegal operation. The trial judge failed to caution the jury that it could not convict defendant of conspiracy if it merely found that defendant, Sears, had "conspired" with the informer, Davis. The Fifth Circuit, in reversing, held:
Although the evidence was sufficient to support the conspiracy charged, it was not the province of the jury to convict Sears merely upon finding that he had accepted money from Davis and furnished protection. This would establish only that Sears had combined with Davis, and as it takes two to conspire, there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy. See United States v. Wray, N.D. Ga., 1925, 8 F.2d 429. In order to convict, it was incumbent upon the jury to find that Sears knew that there were others assisting Davis in his illegal whisky activities. Appellant requested a cautionary instruction to this effect which was refused by the District Court. We hold this was error. In view of the posture of the evidence and the charge actually given by the court, the jury may well have believed that it could convict Sears simply by believing that he agreed with Davis and accepted bribes from him. Consequently, the court should have given a cautionary instruction to the effect that even if the jury believed Sears had done these things, it could convict only if it further believed that he did so with knowledge that Johnson and Wright, or some anonymous persons, were also involved in the illegal enterprise. [343 F.2d at 142]
Since the court's charge would permit defendant's conviction of conspiracy with a person with whom he could not, *103 under our present statute and governing decisions, be convicted the charge could bring about an unjust result and constitutes plain error warranting reversal.

II. Limitation of cross-examination of Cohn as to his being the subject of a "welfare fraud" investigation.

The trial judge repeatedly foreclosed defense counsel from asking Cohn whether he was being investigated by the Atlantic County Prosecutor concerning an alleged "welfare fraud." The trial judge informed counsel that this subject could be explored only if it is shown that Cohn "agreed to cooperate with the police in exchange for immunity from prosecution for welfare fraud." The judge added that he knew from "the prior trial" that no immunity was granted to Cohn with respect to potential welfare fraud charges.
Atlantic County Prosecutor Richard Williams testified that Cohn had been assured that any information he gave regarding police "payoffs" would not be used against him. He added "I also indicated that with regard to a general investigation which we had, that I was not interested in pursuing that. That general investigation related to the general operation of his hotels and was not necessarily criminal in nature." The trial judge precluded further inquiries by defense counsel concerning the general investigation, noting that the activities being investigated "fell short of criminal activity."
Apparently, the welfare investigation concerned charges that welfare recipients were being compelled to endorse their welfare checks to Cohn, who then "handled their money for them." It is inferable that the prosecutor halted the investigation in return for Cohn's cooperation in the instant matter. The question, then, is whether the trial judge abused his discretion in refusing to permit defendant to explore the details of that investigation and the reason why it was dropped.
Contrary to the trial judge's assertion, it is not necessary to show that there existed a prior arrangement between *104 the prosecutor and the witness whereby the latter was to receive immunity from criminal prosecution, before his "expectations for favorable treatment" may be shown as evidence of bias. See generally, State v. Curcio, 23 N.J. 521, 527 (1957); State v. Spruill, 16 N.J. 73, 78-79 (1954). Thus, in State v. Vaccaro, 142 N.J. Super. 167 (App. Div.), certif. den. 71 N.J. 518 (1976), it was held:
Whether a witness actually received favorable treatment is not a sine qua non to appropriate cross-examination relating to colorable bias of the witness toward the State because of possible favorable treatment in connection with criminal charges. The test of propriety of questions addressed to credibility is not necessarily whether there was an arrangement to grant the witness concessions. It is as relevant and significant for a defendant to demonstrate the state of mind of the witness based on his subjective reactions to the favorable treatment he may have received or may hope to receive in connection with his own criminal involvement. [at 176]
See also, State v. Furey, 128 N.J. Super. 12, 24 (App. Div. 1974). Thus, it is clear that formal arrangements with the prosecutor are not a prerequisite for showing bias.
That a defendant should not be restricted in demonstrating the possible bias of a prosecution witness to circumstances wherein the witness has criminal charges pending against him is a logical rule. The kinds and sources of partiality are nearly infinite. McCormick, Evidence (2 ed. 1972), § 40 at 78. Here, Cohn's motivation to testify may have resulted from the prosecutor's decision to halt the investigation into his business operations. The fact that the investigation was "not necessarily criminal in nature" is not significant. Such an investigation may well have exposed criminal conduct and questionable business practices on the part of Cohn. Indeed, information uncovered may have a bearing on the future licensing of his hotels. Thus, the fact that the investigation touched upon such areas is significant in demonstrating the possibility of bias.
While it is true that the prosecutor on direct examination stated that he halted a "general investigation" of Cohn, we *105 conclude that the trial judge abused his discretion by refusing to allow some expansion of this subject. The "essential facts" demonstrating prejudice must always be allowed into evidence. State v. Smith, 101 N.J. Super. 10, 14 (App. Div. 1968), certif. den. 53 N.J. 577 (1969); see generally, State v. Pontery, 19 N.J. 457, 472 (1955). It would be impossible to know the strength of Cohn's possible bias if it could not be determined what types of things the investigation focused upon. See State v. Mathis, 47 N.J. 455, 468-469 (1966), aff'd 52 N.J. 238 (1968), rev'd on other grounds 403 U.S. 946, 91 S.Ct. 2277, 29 L.Ed.2d 855 (1971), reh. den. 404 U.S. 876, 92 S.Ct. 31, 30 L.Ed.2d 125 (1971); cf. 3A Wigmore, Evidence (Chadbourn rev. 1970), § 951 at 796. These areas of investigation are essential facts which the trial judge should have allowed defendant to develop.
Because the evidence against defendant arose primarily from Cohn's testimony, we conclude that the trial judge committed reversible error by precluding defendant from showing bias. While the jury was told that Cohn received a promise of immunity concerning the police "payoffs," thus demonstrating bias to some degree, the jury may well have considered this fact insignificant, since Cohn during the period in question was acting as a police agent anyhow. Therefore, other factors which might have shown Cohn to be biased toward the State may have played a decisive role in the jury's assessment of his credibility. The limitation of cross-examination of Cohn as to the welfare investigation constituted reversible error.

III. Cohn's prior "conviction" in Maryland.

Since a new trial is hereby ordered, the issue of cross-examination of Cohn as to his alleged prior conviction of assault and battery on a police officer in Maryland may again arise. Defense counsel's efforts to impeach Cohn on that ground were precluded by the trial judge after a voir dire hearing. The judge noted, first, that the alleged offense, *106 having occurred in 1952, was remote in time and, second, that it was not clear that there had in fact been a conviction of crime since no properly authenticated record thereof was produced.
On the voir dire hearing Cohn testified that he recalled being charged at some time in Maryland with assault and battery on a police officer. Although he recalled that the final disposition was "guilty," he could not remember whether he pleaded guilty or what the "trial procedures" were. He did recall that no record was made of the trial. As the trial judge stated:
"Counsel has offered to the court as proof of a conviction of crime something which apparently was extracted from a police department blotter signed by a policeman, not under the hand and seal of any clerk of a court, and most certainly falls far short before [sic] the proofs required to establish the conviction of a crime."
Under N.J.S.A. 2A:81-12 conviction of crime, for the purpose of impeaching the credibility of a witness, may be shown by "production of the record thereof" or "by examination." There was no production of the record of the Maryland proceedings here. See State v. Nagy, 27 N.J. Super. 1, 7 (App. Div. 1953). However, we consider that Cohn's statements at the voir dire hearing were sufficient to establish his conviction of a crime, "by examination" within the meaning of the statute, notwithstanding his equivocation as to the details of the proceedings. Cf. State v. Anderson, 35 N.J. 472, 491 (1961). We also note that under the statute, a witness may be impeached by prior convictions, no matter how remote in time. State v. Hawthorne, 49 N.J. 130, 135 (1967).
The conviction is reversed and a new trial ordered.